**THIS PROPOSED COMBINED PLAN AND DISCLOSURE STATEMENT HAS NOT RECEIVED INTERIM APPROVAL FROM THE BANKRUPTCY COURT AND THE DEBTORS' PROPOSED SOLICITATION PROCEDURES HAVE NOT RECEIVED BANKRUPTCY COURT APPROVAL. ACCORDINGLY, THE FILING AND DISSEMINATION OF THIS PROPOSED COMBINED PLAN AND DISCLOSURE STATEMENT ARE NOT INTENDED AND SHOULD NOT IN ANY WAY BE CONSTRUED AS A SOLICITATION OF VOTES ON THIS COMBINED PLAN AND DISCLOSURE STATEMENT, NOR SHOULD THE INFORMATION CONTAINED HEREIN BE RELIED UPON FOR ANY PURPOSE UNTIL APPROPRIATE BANKRUPTCY COURT APPROVAL IS OBTAINED.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SDI SOLUTIONS LLC, *et al.*, | Case No. 16-10627 (CSS) |
| Debtors.[1] | Jointly Administered |

## DEBTORS' COMBINED DISCLOSURE STATEMENT
## AND CHAPTER 11 PLAN OF LIQUIDATION

Dated:  May 24, 2016
         Wilmington, Delaware

**DLA PIPER LLP (US)**
Stuart M. Brown (DE 4050)
Kaitlin M. Edelman (DE 5924)
1201 N. Market Street, Suite 2100
Wilmington, DE 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
Email: Stuart.Brown@dlapiper.com
         Kaitlin.Edelman@dlapiper.com

**DLA PIPER LLP (US)**
Thomas R. Califano (admitted *pro hac vice*)
Daniel G. Egan (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, New York  10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501
Email:  Thomas.Califano@dlapiper.com
         Daniel.Egan@dlapiper.com

*Attorneys for Debtors And Debtors In Possession*

---

[1]    The Debtors in these Chapter 11 Cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  SDI Solutions LLC (5389); and SDI Opco Holdings, LLC (8848).  The mailing address for the Debtors, solely for purposes of notices and communications, is 33 W. Monroe, Suite 400, Chicago, IL 60603.

# TABLE OF CONTENTS

**PAGE**

I.      INTRODUCTION ........................................................................................... 1

II.     DEFINITIONS AND CONSTRUCTION OF TERMS........................................ 1

        A.      Definitions................................................................................... 1

        B.      Interpretation; Application of Definitions and Rules of Construction................. 15

III.    BACKGROUND .......................................................................................... 15

        A.      Overview of the Debtors' Business .................................................. 16

                1.      Description of the Debtors' Operations .................................. 16

                2.      The Debtors' Organizational Structure .................................. 16

        B.      The Debtors' Prepetition Capital Structure...................................... 16

        C.      Events Precipitating the Chapter 11 Filing ..................................... 17

        D.      The Chapter 11 Cases ................................................................... 18

                1.      First Day Orders (other than the DIP Orders)........................ 18

                2.      Appointment of Creditors' Committee .................................. 20

                3.      Employment of Professionals and Advisors ........................... 20

                4.      Schedules and Section 341(a) Meeting of Creditors............... 21

                5.      Postpetition Financing and Cash Collateral Orders ............... 21

                6.      Sale of Substantially All of the Debtors' Assets................... 22

                        a.      Marketing Process and Bidding Procedures Order ........ 22

                        b.      363 Sale Order and Sale of Assets to the Purchaser ........ 22

                7.      Global Settlement........................................................... 23

                8.      Rejection of Executory Contracts ...................................... 24

IV.     CONFIRMATION AND VOTING................................................................ 24

        A.      Confirmation Procedure................................................................ 24

                1.      Plan Confirmation Hearing................................................. 24

                2.      Requirements for Confirmation .......................................... 25

                3.      Best Interests of Creditors Test ......................................... 25

                4.      Feasibility....................................................................... 26

                5.      Classification of Claims and Interests................................. 26

                6.      Impaired Claims or Interests .............................................. 26

- i -

**TABLE OF CONTENTS**
**(Continued)**

| | | |
|---|---|---|
| | 7. | Eligibility to Vote on this Combined Plan and Disclosure Statement ................................................................. 27 |
| | 8. | Procedure/Voting Deadlines ........................................ 27 |
| | 9. | Acceptance of this Combined Plan and Disclosure Statement ............... 28 |
| | 10. | Elimination of Vacant Classes ................................... 28 |
| V. | | TREATMENT OF UNCLASSIFIED CLAIMS ........................ 29 |
| | A. | Administrative Expense Claims ................................... 29 |
| | B. | Priority Tax Claims ............................................... 29 |
| | C. | Compensation and Reimbursement Claims ...................... 29 |
| | D. | Statutory Fees ................................................... 30 |
| VI. | | CLASSIFICATION OF CLAIMS AND INTERESTS; ESTIMATED RECOVERIES ........................................................ 30 |
| VII. | | TREATMENT OF CLAIMS AND INTERESTS ..................... 31 |
| | A. | Treatment of Claims .............................................. 31 |
| | 1. | Class 1 – Postpetition Lender Secured Claim .................. 31 |
| | | a. | Classification ............................................. 31 |
| | | b. | Impairment and Voting .................................. 31 |
| | | c. | Treatment ................................................. 31 |
| | 2. | Class 2 – Other Secured Claims ................................ 31 |
| | | a. | Classification ............................................. 31 |
| | | b. | Impairment and Voting .................................. 32 |
| | | c. | Treatment ................................................. 32 |
| | 3. | Class 3 – Other Priority Claims ................................ 32 |
| | | a. | Classification ............................................. 32 |
| | | b. | Impairment and Voting .................................. 32 |
| | | c. | Treatment ................................................. 32 |
| | 4. | Class 4A – SDI Solutions General Unsecured Creditors ...... 33 |
| | | a. | Classification ............................................. 33 |
| | | b. | Impairment and Voting .................................. 33 |

**TABLE OF CONTENTS**
**(Continued)**

**PAGE**

|   |   | c. | Treatment ................................................................................ 33 |
|---|---|---|---|
|   | 5. | | Class 4B – SDI Opco General Unsecured Creditors .............................. 33 |
|   |   | a. | Classification............................................................................ 33 |
|   |   | b. | Impairment and Voting .............................................................. 33 |
|   |   | c. | Treatment ................................................................................ 34 |
|   | 6. | | Class 5 – Postpetition Lender Deficiency Claim ................................ 34 |
|   |   | a. | Classification............................................................................ 34 |
|   |   | b. | Impairment and Voting .............................................................. 34 |
|   |   | c. | Treatment ................................................................................ 34 |
|   | 7. | | Class 6 – Subordinated Other Claims ................................................ 35 |
|   |   | a. | Classification............................................................................ 35 |
|   |   | b. | Impairment and Voting .............................................................. 35 |
|   |   | c. | Treatment ................................................................................ 35 |
|   | 8. | | Class 7A – SDI Solutions Interests .................................................... 35 |
|   |   | a. | Classification............................................................................ 35 |
|   |   | b. | Impairment and Voting .............................................................. 35 |
|   |   | c. | Treatment ................................................................................ 35 |
|   | 9. | | Class 7B – SDI Opco Interests .......................................................... 36 |
|   |   | a. | Classification............................................................................ 36 |
|   |   | b. | Impairment and Voting .............................................................. 36 |
|   |   | c. | Treatment ................................................................................ 36 |
|   | B. | | Modification of Treatment of Claims and Interests................................ 36 |
|   | C. | | Cramdown and No Unfair Discrimination............................................ 36 |
| VIII. | | | PROVISIONS REGARDING THE LIQUIDATION TRUST.......................... 36 |
|   | A. | | Appointment of the Liquidation Trustee............................................. 36 |
|   | B. | | Creation of Liquidation Trust ......................................................... 37 |
|   | C. | | Beneficiaries of Liquidation Trust .................................................... 37 |
|   | D. | | Vesting and Transfer of Assets to the Liquidation Trust....................... 37 |

EAST\123901513.4

# TABLE OF CONTENTS
## (Continued)

**PAGE**

E.     Certain Powers and Duties of the Liquidation Trust and Liquidation Trustee .................................................................................................. 38

      1.     General Powers of the Liquidation Trustee ............................. 38

      2.     Books and Records ................................................................... 39

      3.     Investments of Cash ................................................................. 39

      4.     Costs and Expenses of Administration of the Liquidation Trust ............ 39

      5.     Reporting ................................................................................. 39

F.     Federal Income Tax Treatment of the Liquidation Trust for the Liquidation Trust Assets .................................................................... 40

G.     Term of Liquidation Trust ...................................................................... 40

H.     Limitation of Liability of the Liquidation Trustee ................................. 41

IX.     ADDITIONAL MEANS FOR IMPLEMENTATION ...................................... 41

    A.     Preservation of Right to Conduct Investigations ................................... 41

    B.     Prosecution and Resolution of Retained Causes of Action ................... 41

    C.     Effectuating Documents and Further Transactions ............................... 42

    D.     Authority to Act ..................................................................................... 42

    E.     Cancellation of Documents .................................................................... 42

    F.     Funding of Liabilities and Distributions ............................................... 42

    G.     Corporate Action; Effectuating Documents; Further Transactions ..................... 42

    H.     Release of Liens ..................................................................................... 43

    I.     Exemption from Securities Laws ........................................................... 43

    J.     Exemption from Certain Taxes and Fees .............................................. 43

    K.     Privileges as to Certain Causes of Action ............................................. 43

    L.     Insurance Policies .................................................................................. 44

    M.     Filing of Monthly and Quarterly Reports and Payment of Statutory Fees .......... 44

    N.     Closing of the Chapter 11 Cases ........................................................... 44

X.     PROVISIONS GOVERNING DISTRIBUTIONS UNDER THIS COMBINED PLAN AND DISCLOSURE STATEMENT ......................................... 44

    A.     Distribution Record Date ....................................................................... 44

**TABLE OF CONTENTS**
**(Continued)**

**PAGE**

| | | | |
|---|---|---|---|
| | B. | Method of Payment | 45 |
| | C. | Claims Objection Deadline | 45 |
| | D. | No Distribution Pending Allowance | 45 |
| | E. | Reserve of Cash Distributions | 45 |
| | F. | Distribution After Allowance | 45 |
| | G. | Delivery of Distributions | 45 |
| | H. | Unclaimed Distributions | 46 |
| | I. | Set-Off | 46 |
| | J. | Postpetition Interest | 46 |
| | K. | Distributions After Effective Date | 47 |
| | L. | Distributions Free and Clear | 47 |
| | M. | Allocation of Distributions Between Principal and Interest | 47 |
| | N. | Prepayment | 47 |
| XI. | | EXECUTORY CONTRACTS | 47 |
| | A. | Rejection of Executory Contracts | 47 |
| | B. | Deadline for Filing Proofs of Claim Relating to Executory Contracts | 48 |
| XII. | | INJUNCTION, EXCULPATION AND RELEASES | 48 |
| | A. | Injunction to Protect Estate Assets | 48 |
| | B. | Term of Injunctions or Stays | 49 |
| | C. | Injunction Against Interference with Plan | 49 |
| | D. | Exculpation | 49 |
| | E. | Releases | 50 |
| | | 1. Debtor Releases | 50 |
| | | 2. Holder Releases | 50 |
| | | 3. Waiver of Statutory Limitations on Releases | 51 |
| | F. | Necessity and Approval of Releases and Injunctions | 51 |
| | G. | Compromise and Settlement of Claims, Interests and Controversies | 51 |

## TABLE OF CONTENTS
### (Continued)

| | | |
|---|---|---|
| XIII. | CONDITIONS PRECEDENT TO AND OCCURRENCE OF CONFIRMATION AND THE EFFECTIVE DATE | 52 |
| | A. Conditions Precedent to Confirmation | 52 |
| | B. Conditions Precedent to the Effective Date | 52 |
| | C. Establishing the Effective Date | 53 |
| | D. Effect of Failure of Conditions | 53 |
| | E. Waiver of Conditions to Confirmation and Effective Date | 53 |
| XIV. | RETENTION OF JURISDICTION | 53 |
| XV. | MISCELLANEOUS PROVISIONS | 55 |
| | A. Amendment or Modification of this Combined Plan and Disclosure Statement | 55 |
| | B. Severability | 55 |
| | C. Revocation or Withdrawal of this Combined Plan and Disclosure Statement | 56 |
| | D. Binding Effect | 56 |
| | E. Notices | 56 |
| | F. Governing Law | 57 |
| | G. Withholding and Reporting Requirements | 57 |
| | H. Headings | 57 |
| | I. Exhibits/Schedules | 57 |
| | J. Filing of Additional Documents | 57 |
| | K. No Admissions | 57 |
| | L. Successors and Assigns | 58 |
| | M. Reservation of Rights | 58 |
| | N. Inconsistency | 58 |
| | O. Consolidation Under Local Rule 1017-3 | 58 |
| | P. Dissolution of the Debtors | 59 |
| | Q. Dissolution of the Creditors' Committee | 59 |
| XVI. | RISKS AND OTHER CONSIDERATIONS | 59 |

# TABLE OF CONTENTS
## (Continued)

**PAGE**

A.    Bankruptcy Considerations ................................................................ 59

B.    No Duty to Update Disclosures ......................................................... 60

C.    Alternatives to Confirmation and Consummation of the Plan ............ 60

    1.    Alternate Plan ........................................................................ 60

    2.    Chapter 7 Liquidation ........................................................... 60

D.    Certain Federal Tax Consequences ................................................... 61

    1.    General ................................................................................... 61

    2.    U.S. Federal Income Tax Consequences to the Debtors......... 62

    3.    U.S. Federal Income Tax Treatment With Respect to the Liquidation Trust ................................................................... 63

    4.    U.S. Federal Income Tax Treatment With Respect to Holders of Allowed Claims that are Beneficiaries of the Liquidation Trust ............ 64

XVII.  RECOMMENDATION AND CONCLUSION ............................................. 66

**EACH HOLDER OF A CLAIM AGAINST THE DEBTORS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN SHOULD READ THIS COMBINED PLAN AND DISCLOSURE STATEMENT IN ITS ENTIRETY BEFORE VOTING. NO SOLICITATION OF VOTES TO ACCEPT OR REJECT THIS COMBINED PLAN AND DISCLOSURE STATEMENT MAY BE MADE EXCEPT PURSUANT TO THE TERMS HEREOF AND BANKRUPTCY CODE SECTION 1125. IF YOU ARE ENTITLED TO VOTE TO APPROVE THE PLAN, YOU ARE RECEIVING A BALLOT WITH YOUR NOTICE OF THIS COMBINED PLAN AND DISCLOSURE STATEMENT. THE DEBTORS URGE YOU TO VOTE TO ACCEPT THE PLAN.**

**THIS COMBINED PLAN AND DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH BANKRUPTCY CODE SECTIONS 1125 AND 1129, BANKRUPTCY RULES 3016 AND 3017, AND LOCAL RULE 3017-2, AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAW OR OTHER APPLICABLE NONBANKRUPTCY LAW. PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING, OR TRANSFERRING CLAIMS AGAINST OR INTERESTS IN THE DEBTORS SHOULD EVALUATE THIS COMBINED PLAN AND DISCLOSURE STATEMENT IN LIGHT OF THE PURPOSE FOR WHICH IT WAS PREPARED. THIS COMBINED PLAN AND DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED TO BE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THIS COMBINED PLAN AND DISCLOSURE STATEMENT AS TO HOLDERS OF CLAIMS AGAINST OR INTERESTS IN THE DEBTORS.**

**IRS CIRCULAR 230 NOTICE: TO ENSURE COMPLIANCE WITH IRS CIRCULAR 230, HOLDERS OF CLAIMS AND INTERESTS ARE HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF U.S. FEDERAL TAX ISSUES CONTAINED OR REFERRED TO IN THIS COMBINED PLAN AND DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY HOLDERS OF CLAIMS OR INTERESTS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON THEM UNDER THE INTERNAL REVENUE CODE; (B) SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE PROMOTION OR MARKETING BY THE DEBTORS OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) HOLDERS OF CLAIMS AND INTERESTS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

**THERE HAS BEEN NO INDEPENDENT AUDIT OF THE FINANCIAL INFORMATION CONTAINED IN THIS COMBINED PLAN AND DISCLOSURE STATEMENT EXCEPT AS EXPRESSLY INDICATED HEREIN. THIS COMBINED PLAN AND DISCLOSURE STATEMENT WAS COMPILED FROM INFORMATION OBTAINED FROM NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE DEBTORS' KNOWLEDGE, INFORMATION, AND BELIEF. THIS COMBINED PLAN AND DISCLOSURE STATEMENT WAS NOT FILED WITH THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE AUTHORITY AND NEITHER THE SECURITIES AND EXCHANGE COMMISSION NOR ANY STATE AUTHORITY HAS PASSED UPON THE ACCURACY, ADEQUACY, OR MERITS OF**

THIS COMBINED PLAN AND DISCLOSURE STATEMENT.  NEITHER THIS COMBINED PLAN AND DISCLOSURE STATEMENT NOR THE SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN CONSTITUTES AN OFFER TO SELL OR THE SOLICITATION OF AN OFFER TO BUY SECURITIES IN ANY STATE OR JURISDICTION IN WHICH SUCH OFFER OR SOLICITATION IS NOT AUTHORIZED.

THIS COMBINED PLAN AND DISCLOSURE STATEMENT MAY CONTAIN "FORWARD LOOKING STATEMENTS" WITHIN THE MEANING OF THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995.  SUCH STATEMENTS CONSIST OF ANY STATEMENT OTHER THAN A RECITATION OF HISTORICAL FACT AND CAN BE IDENTIFIED BY THE USE OF FORWARD LOOKING TERMINOLOGY SUCH AS "MAY," "EXPECT," "ANTICIPATE," "ESTIMATE," OR "CONTINUE" OR THE NEGATIVE THEREOF OR OTHER VARIATIONS THEREON OR COMPARABLE TERMINOLOGY.  THE READER IS CAUTIONED THAT ALL FORWARD LOOKING STATEMENTS ARE NECESSARILY SPECULATIVE AND THERE ARE CERTAIN RISKS AND UNCERTAINTIES THAT COULD CAUSE ACTUAL EVENTS OR RESULTS TO DIFFER MATERIALLY FROM THOSE REFERRED TO IN SUCH FORWARD LOOKING STATEMENTS.

ANY PROJECTED RECOVERIES TO CREDITORS SET FORTH IN THIS COMBINED PLAN AND DISCLOSURE STATEMENT ARE BASED UPON THE ANALYSES PERFORMED BY THE DEBTORS AND THEIR ADVISORS. ALTHOUGH THE DEBTORS AND THEIR ADVISORS HAVE MADE EVERY EFFORT TO VERIFY THE ACCURACY OF THE INFORMATION PRESENTED HEREIN, THE DEBTORS AND THEIR ADVISORS CANNOT MAKE ANY REPRESENTATIONS OR WARRANTIES REGARDING THE ACCURACY OF THE INFORMATION.

NOTHING STATED HEREIN SHALL BE DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTORS OR ANY OTHER PARTY.  THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED. THE DELIVERY OF THIS COMBINED PLAN AND DISCLOSURE STATEMENT SHALL NOT BE DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME AFTER THE DATE HEREOF.

IT IS THE OPINION OF THE DEBTORS AND THE CREDITORS' COMMITTEE THAT THE TREATMENT OF CREDITORS UNDER THE PLAN CONTEMPLATES A GREATER RECOVERY THAN THAT WHICH IS LIKELY TO BE ACHIEVED UNDER OTHER ALTERNATIVES FOR THE DEBTORS. ACCORDINGLY, THE DEBTORS AND THE CREDITORS' COMMITTEE BELIEVE THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF CREDITORS, AND THE DEBTORS RECOMMEND THAT CREDITORS SUPPORT AND VOTE TO ACCEPT THE PLAN.

# I.   INTRODUCTION

SDI Solutions LLC ("**SDI Solutions**") and SDI Opco Holdings, LLC ("**SDI Opco**" and, together with SDI Solutions, the "**Debtors**") hereby propose this Combined Plan and Disclosure Statement pursuant to sections 1125 and 1129 of the Bankruptcy Code and Local Rule 3017-2.[2] While the Debtors are the proponents of this Combined Plan and Disclosure Statement within the meaning of section 1129 of the Bankruptcy Code, this Combined Plan and Disclosure Statement, as may be amended from time to time, is the culmination of extensive negotiations between the Debtors, the Creditors' Committee, and PGV, resulting in this consensual liquidating chapter 11 plan for the Debtors and the remaining assets of the estates. The Creditors' Committee and PGV support this Combined Plan and Disclosure Statement and encourage the Holders of Impaired Claims entitled to vote hereunder to vote to accept this Combined Plan and Disclosure Statement.

This Combined Plan and Disclosure Statement contemplates the creation of a Liquidating Trust from which, pursuant to the terms of this Combined Plan and Disclosure Statement and the Liquidating Trust Agreement, Distributions shall be made for the benefit of Holders of various Allowed Claims.  As a result of the consideration and various concessions being provided by PGV, this Combined Plan and Disclosure Statement provides for meaningful benefits to the Debtors' estates and Creditors holding Allowed Claims. PGV has agreed to, among other things, (i) release and forgo any Liens it may otherwise have upon various claims, causes of action, and funds transferred to the Liquidating Trust hereunder; (ii) forgo and waive any right to receive a Distribution on account of its unsecured deficiency claim, which will enhance any recoveries for other Holders of Allowed General Unsecured Claims; and (iii) allocate $500,000 in cash from its collateral or other property to be transferred to the Liquidating Trust and used to, among other things, make Distributions to Holders of Allowed General Unsecured Claims.  These agreements are reflected in the Global Settlement Order and DIP Orders approved by the Court.  The Debtors submit that the consideration paid and other concessions by PGV constitute substantial value to the estates without which confirmation and implementation of this Combined Plan and Disclosure Statement and the benefits contained herein would not be possible.

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in Section XV.A. of this Combined Plan and Disclosure Statement, the Debtors, after consultation with the Creditors' Committee, expressly reserve the right to alter, amend, or modify this Combined Plan and Disclosure Statement, including the Plan Supplement, one or more times before substantial consummation thereof.

# II. DEFINITIONS AND CONSTRUCTION OF TERMS

## A.   Definitions

As used herein, the following terms have the respective meanings specified below, unless the context otherwise requires:

---

[2]   Capitalized terms used but not defined in this Introduction have the meanings ascribed to them in Section II of this Combined Plan and Disclosure Statement.

1.      "**363 Sale**" means the sale of substantially all of the Debtors' Assets as set forth in, and in accordance with, the 363 Sale Documents.

2.      "**363 Sale Agreement**" means that certain Asset Purchase Agreement, dated as of March 13, 2016, by and among PGV, as Purchaser, and SDI Solutions and SDI Opco, as sellers, together with all schedules and exhibits thereto, as the same may be amended, modified, or supplemented from time to time.

3.      "**363 Sale Documents**" means the 363 Sale Agreement, the 363 Sale Order, and all documents, instruments, and agreements executed and delivered in connection therewith.

4.      "**363 Sale Motion**" means the *Motion of the Debtors and Debtors in Possession Pursuant to Section 105(a), 363 and 365 of the Bankruptcy Code for an Order (I)(A) Approving Procedures in Connection with the Sale of Substantially All of the Debtors' Assets; (B) Scheduling the Related Auction and Hearing to Consider Approval of Sale; (C) Approving Procedures Related to the Assumption of Certain Executory Contracts and Unexpired Leases; (D) Approving the Form and Manner of Notice Thereof; (E) Approving Expense Reimbursement; and (F) Granting Related Relief; and (II)(A) Authorizing the Sale of Substantially All of the Debtors' Assets Pursuant to the Successful Bidder's Asset Purchase Agreement Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (C) Granting Related Relief*, Filed by the Debtors on March 13, 2016 [Docket No. 13].

5.      "**363 Sale Order**" means the *Order Authorizing (A) the Sale of Substantially All of the Debtors' Assets Free and Clear of All Claims, Liens, Rights, Interest and Encumbrances; (B) the Debtors to Enter Into and Perform Their Obligations Under the Asset Purchase Agreement; and (C) the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases*, entered by the Bankruptcy Court on May 16, 2016 [Docket No. 235].

6.      "**Acquired Assets**" means all Assets transferred, conveyed, sold, and assigned to the Purchaser under and in connection with the consummation of the 363 Sale under the 363 Sale Documents, which are set forth in more detail in the 363 Sale Agreement.

7.      "**Acquired Avoidance Actions**" means all Avoidance Actions purchased by and transferred to the Purchaser under and in connection with the 363 Sale Documents.

8.      "**Administrative Expense Claim Bar Dates**" means, collectively, the Initial Administrative Expense Claim Bar Date and the Second Administrative Expense Claim Bar Date.

9.      "**Administrative Expense Claim**" means any Claim constituting an actual, necessary cost or expense of administering the Chapter 11 Cases under sections 503(b) and 507(a)(2) of the Bankruptcy Code including, without limitation, (a) any actual and necessary costs and expenses of preserving the Estates, (b) all compensation and reimbursement of expenses under section 330 or 503 of the Bankruptcy Code, (c) any fees or charges assessed against the Estates under section 1930 of chapter 123 of title 28 of the United States Code, and (d) all Claims arising under section 503(b)(9) of the Bankruptcy Code.

10.     "**Allowed**" means, with respect to Claims: (a) any Claim, proof of which was timely Filed (or for which Claim, under this Combined Plan and Disclosure Statement, the Bankruptcy Code, or a Final Order of the Bankruptcy Court, a Proof of Claim is not or shall not be required to be Filed); (b) any Claim which has been or hereafter is listed by the Debtors in the Schedules as liquidated in amount and not disputed or contingent and for which no Proof of Claim has been Filed; or (c) any Claim expressly allowed pursuant to this Combined Plan and Disclosure Statement or a Final Order of the Bankruptcy Court; provided that any Claim described in clauses (a) and (b) shall be considered Allowed only if and to the extent that with respect to such Claim, no objection to the allowance thereof has been interposed within the applicable period fixed by this Combined Plan and Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such objection is interposed and the Claim is subsequently Allowed by a Final Order; provided, further, that Claims Allowed solely for purposes of voting on this Combined Plan and Disclosure Statement pursuant to an Order of the Bankruptcy Court shall not be considered "Allowed" Claims hereunder.   An Allowed Claim shall be net of any valid setoff exercised with respect to such Claim pursuant to the provisions of the Bankruptcy Code and applicable law.   Moreover, any portion of a Claim that is satisfied, released, or waived during the Chapter 11 Cases is not an Allowed Claim.   Unless otherwise specified in this Combined Plan and Disclosure Statement, in section 506(b) of the Bankruptcy Code, or by Final Order of the Bankruptcy Court, "Allowed" Claims shall not, for purposes of Distributions under this Plan, include interest on such Claim accruing from and after the Petition Date.

11.     "**Approved Budget**" means the budget attached to the Final DIP Order, as amended, modified, or updated from time to time in accordance with the Postpetition Credit Agreement and Final DIP Order.

12.     "**Assets**" means all tangible and intangible assets of every kind and nature of the Debtors and the Estates within the meaning of section 541 of the Bankruptcy Code.

13.     "**Assumed Liabilities**" means any and all liabilities assumed by the Purchaser in connection with the 363 Sale, as set forth in the 363 Sale Documents.

14.     "**Avoidance Actions**" means all rights to avoid transfers or distributions and recover any such avoided transfers or distributions for the benefit of the Estates under chapter 5 of the Bankruptcy Code or otherwise, including, but not limited to, Bankruptcy Code sections 506(d), 522, 541, 542, 543, 544, 545, 547, 548, 549, 550, or 553, or otherwise under the Bankruptcy Code or under similar or related state or federal statutes and common law, including, without limitation, all preference, fraudulent conveyance, fraudulent transfer, and/or other similar avoidance claims, rights, and causes of action, whether or not demand has been made or litigation has been commenced as of the Effective Date to prosecute such Avoidance Actions; subject, however, to any releases thereof provided in this Combined Plan and Disclosure Statement, the Plan Confirmation Order, the Final DIP Order, the 363 Sale Order, or any other Final Order of the Bankruptcy Court.

15.     "**Ballot**" means the ballot on which each Holder of a Claim entitled to vote on the acceptance or rejection of this Combined Plan and Disclosure Statement casts such vote.

- 3 -

16.    "**Balloting Agent**" means Donlin Recano.

17.    "**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*

18.    "**Bankruptcy Court**" or "**Court**" means the United States Bankruptcy Court for the District of Delaware, having jurisdiction over the Chapter 11 Cases, or if such Court ceases to exercise jurisdiction over the Chapter 11 Cases, such court or adjunct thereof that exercises jurisdiction over the Chapter 11 Cases in lieu of the United States Bankruptcy Court for the District of Delaware.

19.    "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time.

20.    "**Beneficiary**" means, with respect to the Liquidation Trust, any Holder of an Allowed Claim or Allowed Interest that may, or that is entitled to, receive a Distribution from the Liquidation Trust under the terms hereof.

21.    "**Bid Procedures**" means those Bidding Procedures attached as Exhibit 1 to the Bid Procedures Order, as amended or modified from time to time.

22.    "**Bid Procedures Order**" means the *Order (A) Approving Procedures in Connection With the Sale of Substantially All of the Debtors' Assets; (B) Scheduling the Related Auction and Hearing to Consider Approval of Sale; (C) Approving Procedures Related to the Assumption of Certain Executory Contracts and Unexpired Leases; (D) Approving the Form and Manner of Notice Thereof; and (E) Granting Related Relief*, entered by the Bankruptcy Court on April 5, 2016 [Docket No. 92], as amended or modified from time to time.

23.    "**Business Day**" means any day other than a Saturday, Sunday, or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order.

24.    "**Cash**" means legal tender of the United States of America and equivalents thereof.

25.    "**Causes of Action**" means all claims, actions (including the Avoidance Actions), causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, third-party claims, counterclaims, and crossclaims of any Debtor and/or any of the Estates against any Person, based in law or equity, including, but not limited to, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted, and any and all commercial tort claims against any Person; and subject, however, to any releases provided in this Combined Plan and Disclosure Statement, the Plan Confirmation Order, the Final DIP Order, the 363 Sale Order, or any other Final Order of the Bankruptcy Court.

26.    "**Chapter 11 Cases**" means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtors, styled as SDI Solutions LLC, *et al.*, under Case No. 16-10627 (CSS), currently pending in the Bankruptcy Court.

27.    "**Claim**" has the meaning set forth in section 101(5) of the Bankruptcy Code.

28.    "**Claims Agent**" means Donlin Recano.

29.    "**Claims Objection Deadline**" means the date that is one hundred and eighty (180) days after the Effective Date or such later date as may be approved by the Bankruptcy Court.

30.    "**Class**" means any group of substantially similar Claims or Interests classified by this Combined Plan and Disclosure Statement pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

31.    "**Clerk**" means the clerk of the Bankruptcy Court.

32.    "**Collateral**" means any property or interest in property of the Debtors or the Estates subject to Lien to secure the payment or performance of a Claim, which Lien is not subject to any Avoidance Action or otherwise waived in accordance with the Global Settlement.

33.    "**Combined Plan and Disclosure Statement**" or "**Plan**" means this combined disclosure statement and chapter 11 plan of liquidation including, without limitation, all exhibits, supplements, appendices, and schedules hereto, either in their present form or as the same may be altered, amended, or modified from time to time through the Effective Date.

34.    "**Compensation and Reimbursement Claim**" means a Claim for compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date pursuant to Bankruptcy Code sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5), including Claims of any Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date.

35.    "**Consummation**" or "**Consummate**" means the occurrence of or to achieve the Effective Date.

36.    "**Contingent Claim**" means any contingent or unliquidated or unmatured Claim asserted or which may be asserted against any Debtor.

37.    "**Credit Bid**" means the purchase of the Acquired Assets by the Purchaser under and in connection with the 363 Sale by bidding a portion of the Postpetition Lender Secured Claims pursuant to section 363(k) of the Bankruptcy Code.

38.    "**Creditor**" means any Person that is the Holder of an Allowed Claim against any of the Debtors.

- 5 -

39.     "**Creditors' Committee**" means the Official Committee of Unsecured Creditors appointed by the U.S. Trustee in the Chapter 11 Cases.

40.     "**Cure**" means the obligation owed by the Debtors and payment of Cash by the Purchaser, respectively, with respect to Executory Contracts assumed and assigned in accordance with the 363 Sale Documents as necessary to cure a monetary default by any Debtor in accordance with the terms of such Executory Contract in the applicable amount set forth in the Cure Notices with respect to such Executory Contract, or as otherwise agreed upon by the Purchaser and the counterparty to such Executory Contract, and permit the Debtors to assume such Executory Contract under section 365(a) of the Bankruptcy Code.

41.     "**Cure Notices**" means all *Notices to Counterparties to Executory Contracts and Unexpired Leases of (I) Potential Assumption and Assignment of Executory Contracts and Unexpired Leases and (II) Cure Amounts* Filed by the Debtors, including those Filed as Docket Nos. 119, 120, 121, 122, 123, 124, 125, 159, and 228, including all amendments and supplements thereto and any additional such notices that may be Filed and served from time to time.

42.     "**D&O Policies**" means all primary and excess insurance policies that provide coverage for liability related to the actions or omissions of the Debtors' directors and officers, and, if applicable, "tail" or "runoff" coverage for such policies.

43.     "**D&O Claims**" means Causes of Action against any current or former directors and officers of the Debtors, in their capacities as such (except for any PGV Parties), that (a) result in a final judgment against a current or former director or officer of the Debtors for either actual fraud, willful misconduct, or gross negligence and/or (b) are covered under the D&O Policies; subject to the limitations and rights set forth in Section VIII.E.1. hereof.

44.     "**Debtors**" means, collectively, SDI Solutions LLC and SDI Opco Holdings, LLC.

45.     "**Debtors in Possession**" means the Debtors in their capacity as debtors in possession in the Chapter 11 Cases pursuant to sections 1101, 1107(a), and 1108 of the Bankruptcy Code.

46.     "**DIP Financing Motion**" means the *Motion Of The Debtors For Entry Of Interim And Final Orders Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364, And 507, Bankruptcy Rules 2002, 4001, 6004, And 9014, And Local Rule 4001-2 (I) Authorizing The Debtors To Obtain Postpetition Financing, (II) Authorizing The Use Of Cash Collateral, (III) Granting Liens And Providing Super-Priority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Scheduling A Final Hearing, And (VI) Granting Related Relief*, Filed by the Debtors on March 13, 2016 [Docket No. 11].

47.     "**DIP Orders**" means, collectively, the Interim DIP Order and the Final DIP Order.

48.     "**Disputed**" means any Claim that is or hereafter may be listed on the Schedules as disputed, contingent, or unliquidated, or which is objected to in whole or in part prior to the

Claims Objection Deadline and has not been Allowed in whole or in part by settlement or Final Order.

49.    "**Distribution**" means Cash, property, interests in property or other value distributed to Holders of Allowed Claims, or their designated agents, or Beneficiaries, as applicable, under or pursuant to this Combined Plan and Disclosure Statement and/or the Liquidation Trust Agreement.

50.    "**Distribution Record Date**" means the record date for purposes of making Distributions under the Plan on account of Allowed Claims, which date shall be the Effective Date.

51.    "**Docket**" means the docket in the Chapter 11 Cases maintained by the Clerk.

52.    "**Donlin Recano**" means Donlin, Recano & Company, Inc.

53.    "**Effective Date**" means the date on which the conditions specified in Section XIII.B. of this Combined Plan and Disclosure Statement have been satisfied or waived and the transactions contemplated hereunder have been consummated.

54.    "**Entity**" means an entity as defined in section 101(15) of the Bankruptcy Code.

55.    "**Estates**" means the estates of the Debtors created upon the commencement of the Chapter 11 Cases, including all of the Debtors' Assets.

56.    "**Executory Contract**" means any executory contract or unexpired lease as of the Petition Date between the Debtors and any other Person or Persons.

57.    "**File**", "**Filed**", or "**Filing**" means file, filed, or filing with the Bankruptcy Court in the Chapter 11 Cases.

58.    "**Final DIP Order**" means the *Final Order Authorizing Debtors to: (A) Use Cash Collateral; (B) Incur Postpetition Debt; (C) Provide Adequate Protection; and (D) Grant Certain Liens and Provide Security and Other Relief to PGV Solutions Midwest, LLC, as Lender*, entered by the Bankruptcy Court on May 3, 2016 [Docket No. 190], as the same may be amended or modified from time to time.

59.    "**Final Order**" means an Order of the Bankruptcy Court or a Court of competent jurisdiction to hear appeals from the Bankruptcy Court, that has not been reversed, stayed, modified, or amended and as to which the time to appeal, to petition for certiorari, or to move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending; provided, however, that the possibility that a motion under Rule 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be Filed with respect to such order shall not cause such order not to be a Final Order.

60.    "**First Day Motions**" has the meaning set forth in Section III.D.1. of this Combined Plan and Disclosure Statement.

61.    "**General Unsecured Claim**" means any Claim against the Debtors that arose or is deemed or determined by the Bankruptcy Code or Bankruptcy Court, as the case may be, to have arisen before the Petition Date and that is not: (i) a Postpetition Lender Secured Claim, (ii) an Other Secured Claim, (iii) an Administrative Expense Claim, (iv) a Priority Tax Claim, (v) an Other Priority Claim or any other Claim entitled to priority under the Bankruptcy Code or any order of the Bankruptcy Court, (vi) a Postpetition Lender Deficiency Claim, or (vii) any Claim that constitutes an Interest. For the avoidance of doubt, General Unsecured Claims shall include Rejection Damages Claims and the Postpetition Lender Deficiency Claim.

62.    "**Global Settlement**" has the meaning set forth in Section III.D.7. of this Combined Plan and Disclosure Statement.

63.    "**Global Settlement Order**" means the *Order Approving Global Settlement Among the Debtors, the Official Committee of Unsecured Creditors, and PGV Solutions Midwest, LLC*, entered by the Bankruptcy Court on May 16, 2016 [Docket No. 234].

64.    "**Governmental Unit**" has the meaning set forth in section 101(27) of the Bankruptcy Code.

65.    "**Gulf Atlantic**" means Gulf Atlantic Capital Corporation.

66.    "**Headquarters Lease**" means the Office Building Lease by and between 33 West Monroe Associates, LLC, as landlord, and SDI Solutions, as tenant, including any and all amendments or modifications thereto.

67.    "**Holder**" means the legal or beneficial holder of any Claim or Interest.

68.    "**Initial Administrative Expense Claim Bar Date**" means July 15, 2016 at 5:00 p.m. (ET) or such other date and time as may be fixed by Order of the Bankruptcy Court as the deadline for Holders of Administrative Expense Claims (but excluding Compensation and Reimbursement Claims and Statutory Fees) incurred during the Initial Administrative Expense Claim Period to File a request for payment of such Administrative Expense Claim.

69.    "**Initial Administrative Expense Claim Period**" means the period of time from the Petition Date through May 31, 2016.

70.    "**Insurance Policies**" means all insurance policies of the Debtors, including any D&O Policy.

71.    "**Intercompany Claims**" means (i) any account reflecting intercompany book entries by one Debtor with respect to the other Debtor, or (ii) any Claim that is not reflected in such book entries and is held by a Debtor against the other Debtor, in each case accruing before or after the Petition Date through the Effective Date, including, but not limited to, any Claim for reimbursement, payment as guarantor or surety, or any Claim for contribution or expenses that were allocable between the Debtors.

72.    "**Interest**" means any equity or membership interest in any Debtor.

- 8 -

73.     "**Interim Compensation Order**" means the *Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals*, entered by the Bankruptcy Court on April 25, 2016 [Docket No. 155], as the same may be amended or modified from time to time.

74.     "**Interim DIP Order**" means the *Interim Order Authorizing Debtors to: (A) Use Cash Collateral on an Emergency Basis; (B) Incur Postpetition Debt on an Emergency Basis; (C) Provide Adequate Protection; and (D) Grant Certain Liens and Provide Security and Other Relief to PGV Solutions Midwest, LLC, as Lender*, entered by the Bankruptcy Court on March 16, 2016 [Docket No. 36], amended by the *Amendment to (I) Interim Order Authorizing Debtors to: (A) Use Cash Collateral on an Emergency Basis; (B) Incur Postpetition Debt on an Emergency Basis; (C) Provide Adequate Protection; and (D) Grant Certain Liens and Provide Security and Other Relief to PGV Solutions Midwest, LLC, as Lender and (II) Postpetition Loan Agreement, and Extension of Interim Order*, entered by the Bankruptcy Court on April 5, 2016 [Docket No. 91].

75.     "**IRC**" means the Internal Revenue Code of 1986, as amended.

76.     "**IRS**" means the Internal Revenue Service.

77.     "**Lien**" means any mortgage, pledge, deed of trust, assessment, security interest, lease, lien, adverse claim, levy, charge, right of first refusal or surrender right, or other encumbrance of any kind, including any "lien" as defined in section 101(37) of the Bankruptcy Code.

78.     "**Liquidation Trust**" means the trust established on the Effective Date as described in Section VIII of this Combined Plan and Disclosure Statement and in accordance with the Liquidation Trust Agreement.

79.     "**Liquidation Trust Agreement**" means the trust agreement, in form and substance acceptable to the Debtors and the Creditors' Committee, to be executed by the Debtors and the Liquidation Trustee as of the Effective Date establishing the Liquidation Trust described in Section VIII of this Combined Plan and Disclosure Statement.

80.     "**Liquidation Trust Assets**" means (i) the Plan Funding Amount, (ii) the Retained Causes of Action, (iii) all other Assets (including any Cash) of the Debtors and the Estates as of the Effective Date, but specifically excluding (a) all Acquired Assets, and (b) any Cause of Action or Claim released pursuant to the terms of this Combined Plan and Disclosure Statement, the Plan Confirmation Order, the Final DIP Order, the 363 Sale Order, or any other Final Order of the Bankruptcy Court.

81.     "**Liquidation Trust Advisors**" means any firm(s) or individual(s) retained by the Liquidation Trustee to serve as the Liquidation Trustee's legal counsel or provide other professional services in connection with the performance of the Liquidation Trustee's duties and responsibilities under this Combined Plan and Disclosure Statement and the Liquidation Trust Agreement.

82.   "**Liquidation Trustee**" means the Person selected by the Creditors' Committee and appointed to administer the Liquidation Trust, which shall be disclosed in the Plan Supplement, with such rights, duties, and obligations as set forth herein and in the Liquidation Trust Agreement.

83.   "**Liquidation Trust Operating Expenses**" means the overhead and other operational expenses of the Liquidation Trust including, but not limited to, (i) reasonable compensation for the Liquidation Trustee in accordance with the Liquidation Trust Agreement, (ii) costs and expenses incurred by the Liquidation Trustee in administering the Liquidation Trust, (iii) Statutory Fees that may become payable after the Effective Date to the U.S. Trustee, and (iv) any fees and expenses payable to the Liquidation Trust Advisors.

84.   "**Liquidation Trust Operating Reserve**" means the reserve established by the Liquidation Trust (from the funds constituting the Plan Funding Amount) deemed necessary by the Liquidation Trustee to satisfy its anticipated Liquidation Trust Operating Expenses (provided, however, that any Statutory Fees applicable to any period from the date of closing of the 363 Sale through the Effective Date shall be payable from the Liquidation Trust Operating Reserve solely to the extent there are insufficient funds in the Professional Fee Carveout to pay such Statutory Fees).

85.   "**Local Rules**" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, as amended from time to time.

86.   "**Order**" means an order, opinion, or judgment of the Bankruptcy Court as entered on the Docket.

87.   "**Other Priority Claim**" means any Claim accorded priority in right of payment under Bankruptcy Code section 507(a), other than a Priority Tax Claim or an Administrative Expense Claim.

88.   "**Other Secured Claims**" means a Secured Claim other than the Postpetition Lender Secured Claim.

89.   "**Person**" means an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated association or organization, a governmental unit or any agency or subdivision thereof or any other entity.

90.   "**Petition Date**" means March 13, 2016, the date on which these Chapter 11 Cases were commenced.

91.   "**PGV**" means PGV Solutions Midwest, LLC and its designees, successors, and assigns.

92.   "**PGV Parties**" means PGV, David Gupta, Hem Gupta, John Barrett, PGV Solutions, LLC, SDI Holding Corp., Sharee Wolff, CJKW, LLC, and each of their respective Related Persons.

- 10 -

93.    "**Plan Confirmation Date**" means the date on which the Clerk of the Bankruptcy Court enters the Plan Confirmation Order on the Docket.

94.    "**Plan Confirmation Hearing**" means the hearing to be held by the Bankruptcy Court to consider approval and confirmation of this Combined Plan and Disclosure Statement, as such hearing may be adjourned or continued from time to time.

95.    "**Plan Confirmation Order**" means an order entered by the Bankruptcy Court approving and confirming this Combined Plan and Disclosure Statement under sections 1125 and 1129 of the Bankruptcy Code.

96.    "**Plan Documents**" means this Combined Plan and Disclosure Statement, the Plan Supplement, and all of the exhibits and schedules attached to any of the foregoing.

97.    "**Plan Funding Amount**" means an aggregate amount of Cash equal to $500,000 allocated by PGV from its Collateral or other property which will be held by the Debtors after consummation of the 363 Sale and which, on the Effective Date, shall be transferred to the Liquidation Trust to be used to (i) fund the Liquidation Trust Operating Reserve as necessary or appropriate to pay all Liquidation Trust Operating Expenses, and (ii) make Distributions to Beneficiaries in accordance with this Combined Plan and Disclosure Statement and the Liquidation Trust Agreement.

98.    "**Plan Supplement**" means the appendix of schedules and exhibits to be Filed at least ten (10) days prior to the Plan Confirmation Hearing containing, among other things, the Liquidation Trust Agreement, as may be amended, modified, and/or supplemented.

99.    "**Postpetition Collateral**" means the Collateral pledged by the Debtors in favor of the Postpetition Lender to secure the Postpetition Lender Claims, as described in more detail in the Postpetition Credit Agreement and the Final DIP Order.

100.    "**Postpetition Credit Agreement**" means the Senior Secured, Super-Priority Debtor-in-Possession Loan and Security Agreement, dated as of March 13, 2016, by and among SDI Solutions, as borrower, SDI Opco, as guarantor, and the Postpetition Lender, as lender, together with all schedules and exhibits thereto, as the same may be amended, modified, or supplemented from time to time.

101.    "**Postpetition Credit Documents**" means the Postpetition Credit Agreement, the DIP Orders, and all documents, instruments, guarantees, and agreements executed and delivered in connection therewith.

102.    "**Postpetition Lender**" means PGV, in its capacity as lender under the Postpetition Credit Documents.

103.    "**Postpetition Lender Claims**" means all Claims of the Postpetition Lender against the Debtors or the Estates arising from, related to, arising under, or in connection with the Postpetition Credit Documents for any and all outstanding obligations thereunder, taking into account all payments or other Distributions made by any of the Debtors or the Estates to the Postpetition Lender prior to the Effective Date on account of such Claims (pursuant to the DIP

- 11 -

Orders, any other Final Order of the Bankruptcy Court, or otherwise) and the amount of any offset of such Claims resulting from the Credit Bid by PGV in connection with the 363 Sale and 363 Sale Documents. The Postpetition Lender Claims include the Postpetition Lender Secured Claim and the Postpetition Lender Deficiency Claim.

104.    "**Postpetition Lender Deficiency Claim**" means the unsecured portion of the Postpetition Lender Claims under section 506 of the Bankruptcy Code remaining unsatisfied after taking into account the amount of PGV's Credit Bid in connection with the 363 Sale and 363 Sale Documents.  The Postpetition Lender Deficiency Claim is deemed Allowed under this Combined Plan and Disclosure Statement.

105.    "**Postpetition Lender Secured Claim**" means the Secured Claim of the Postpetition Lender in connection with all of the Debtors' outstanding obligations under and in connection with the Postpetition Credit Documents remaining unsatisfied after taking into account the amount of PGV's credit bid under section 363(k) of the Bankruptcy Code in connection with the 363 Sale and 363 Sale Documents.  The Postpetition Lender Secured Claim is deemed Allowed under this Combined Plan and Disclosure Statement.

106.    "**Prepetition Credit Agreement**" means that certain Amended and Restated Credit Agreement, dated as of June 17, 2013, among PGV, as Prepetition Lender, SDI Solutions, as borrower, and SDI Opco, as guarantor, as amended, restated, reaffirmed, or supplemented from time to time.

107.    "**Prepetition Credit Documents**" means the Prepetition Credit Agreement and all documents, instruments, guarantees, and agreements executed and delivered in connection therewith.

108.    "**Prepetition Lender**" means PGV, as successor to Fifth Third Bank, in its capacity as lender under the Prepetition Credit Documents.

109.    "**Prepetition Loans**" has the meaning set forth in Section III.B. hereof.

110.    "**Prepetition Opco Guaranty**" has the meaning set forth in Section III.B. hereof.

111.    "**Prepetition Revolving Commitment**" has the meaning set forth in Section III.B. hereof.

112.    "**Prepetition Term Loan**" has the meaning set forth in Section III.B. hereof.

113.    "**Priority Tax Claim**" means a Claim that is entitled to priority under section 507(a)(8) of the Bankruptcy Code.

114.    "**Privilege**" means the attorney client privilege, work product protections or other immunities (including without limitation those related to common interests or joint defenses with other parties), or protections from disclosure of any kind held by the Debtors or their Estates.

115.    "**Professional**" means any professional person employed by the Debtors or the Creditors' Committee in the Chapter 11 Cases pursuant to section 327, 363, or 1103 of the Bankruptcy Code or otherwise pursuant to an Order of the Bankruptcy Court.

116.    "**Professional Fee Carveout**" means the Carveout as defined in the Final DIP Order, which amounts shall be funded and paid by PGV in accordance with the Final DIP Order and the Global Settlement.

117.    "**Professional Fee Carveout Reserve**" means a reserve account established in an amount necessary satisfy in full the Professional Fee Carveout under and on the terms set forth in the Final DIP Order, less any amounts previously paid towards the fees and expenses of Professionals during the Chapter 11 Cases prior to the Effective Date in accordance with the Final DIP Order and the Interim Compensation Order, which reserve shall be held by the Liquidating Trustee, segregated from other funds and Liquidation Trust Assets, and used for the payment of Allowed Compensation and Reimbursement Claims and any other fees, expenses, and payments described in the Professional Fee Carveout, subject to the Final DIP Order.

118.    "**Pro Rata Share**" means, with respect to any Distribution on account of any Allowed Claim, the ratio that the amount of such Allowed Claim bears to the aggregate amount of all Allowed Claims in the same Class; provided that for any Distribution on account of any Allowed Claim in Classes 4A or 4B, Pro Rata Share shall refer to the ratio that the amount of such Allowed Claim bears to the aggregate amount of all Allowed Claims in both Classes 4A and 4B.

119.    "**Purchaser**" means PGV, in its capacity as purchaser under the 363 Sale Agreement.

120.    "**Rejection Damages Claim**" means any Claim under section 502(g) of the Bankruptcy Code arising from, or relating to, the rejection of an Executory Contract pursuant to section 365(a) of the Bankruptcy Code by the Debtors, as limited, in the case of a rejected employment contract or unexpired lease, by section 502(b) of the Bankruptcy Code.

121.    "**Related Persons**" means, with respect to any Person, such Person's predecessors, successors, assigns and present and former shareholders, affiliates (whether by operation of law or otherwise), subsidiaries, principals, employees, agents, officers, directors, managers, trustees, partners, members, professionals, representatives, advisors, attorneys, financial advisors, accountants, investment bankers, and consultants, and any Person claiming by or through them.

122.    "**Released Parties**" means the Debtors, PGV (whether in its capacity as Prepetition Lender, Postpetition Lender, or Purchaser), the Creditors' Committee and members of the Creditors' Committee (solely in their capacity as members of the Creditors' Committee), and each of their respective Related Persons.

123.    "**Retained Avoidance Actions**" means all Avoidance Actions **not** (a) purchased by and transferred to the Purchaser under the 363 Sale Documents, or (b) released by this Combined Plan and Disclosure Statement, the Plan Confirmation Order, the Final DIP Order, the 363 Sale Order, or any other Final Order of the Bankruptcy Court.

- 13 -

124.    "**Retained Causes of Action**" means all Causes of Action **not** (a) purchased by and transferred to the Purchaser under the 363 Sale Documents, including Retained Avoidance Actions and D&O Claims, or (b) released by this Combined Plan and Disclosure Statement, the Plan Confirmation Order, the Final DIP Order, the 363 Sale Order, or any other Final Order of the Bankruptcy Court.

125.    "**Schedules**" means the schedules of assets and liabilities and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code and Bankruptcy Rule 1007(b), as such schedules or statements may be amended or supplemented from time to time.

126.    "**SDI Opco**" means SDI Opco Holdings, LLC, a Delaware limited liability company, one of the Debtors in these Chapter 11 Cases.

127.    "**SDI Opco General Unsecured Claim**" means a General Unsecured Claim against SDI Opco.

128.    "**SDI Opco Interest**" means an Interest in SDI Opco.

129.    "**SDI Solutions**" means SDI Solutions LLC, a Delaware limited liability company, one of the Debtors in these Chapter 11 Cases.

130.    "**SDI Solutions General Unsecured Claim**" means a General Unsecured Claim against SDI Solutions.

131.    "**SDI Solutions Interest**" means an Interest in SDI Solutions.

132.    "**Second Administrative Expense Claim Bar Date**" means the first Business Day that is thirty (30) days after the Effective Date or such other date ordered by the Bankruptcy Court as the deadline for Holders of Administrative Expense Claims (but excluding Compensation and Reimbursement Claims and Statutory Fees) incurred during the Second Administrative Expense Claim Period to File a request for payment of such Administrative Expense Claim.

133.    "**Second Administrative Expense Claim Period**" means the period of time from June 1, 2016 through the Effective Date.

134.    "**Secured Claim**" means a Claim (i) that is secured by a Lien on any Assets, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law, or a Claim that is subject to a valid right of the Creditor of setoff against amounts owed to the Debtors; (ii) to the extent of the value of the Holder's interest in the Estates' interest in such Assets or to the extent of the amount subject to a valid right of setoff, as applicable; and (iii) the amount of which (A) is undisputed by the Debtors or (B) if disputed by the Debtors, such dispute is settled by written agreement between the Debtors or the Liquidation Trustee and the Holder of such Claim or determined, resolved, or adjudicated by Final Order.

- 14 -

135.   "**Statutory Fees**" means any and all fees payable to the U.S. Trustee pursuant to section 1930 of title 28 of the United States Code and any interest thereupon.

136.   "**Subordinated Other Claim**" means any Claim asserted against any Debtor that is subordinated pursuant to either sections 510(b) or 510(c) of the Bankruptcy Code.

137.   "**Unclaimed Distribution**" means a Distribution that is not claimed by a Holder of an Allowed Claim on or prior to the Unclaimed Distribution Deadline.

138.   "**Unclaimed Distribution Deadline**" means ninety (90) days from the date the Liquidation Trustee makes a Distribution.

139.   "**Voting Deadline**" means that date and time defined as the voting deadline in Section IV.A.8. of this Combined Plan and Disclosure Statement.

140.   "**U.S. Trustee**" means the Office of the United States Trustee for the District of Delaware.

**B.      Interpretation; Application of Definitions and Rules of Construction**

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter. Unless otherwise specified, all section, article, schedule, or exhibit references in this Combined Plan and Disclosure Statement are to the respective section in, article of, Schedule to, or Exhibit to this Combined Plan and Disclosure Statement. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Combined Plan and Disclosure Statement as a whole and not to any particular section, subsection or clause contained in this Combined Plan and Disclosure Statement. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of this Combined Plan and Disclosure Statement. A term used herein that is not defined herein, but that is used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code. The headings in this Combined Plan and Disclosure Statement are for convenience of reference only and shall not limit or otherwise affect the provisions of this Combined Plan and Disclosure Statement.   Any reference to the "Liquidation Trustee" shall be deemed to include a reference to the "Liquidation Trust" and any reference to the "Liquidation Trust" shall be deemed to include a reference to the "Liquidation Trustee" unless the context otherwise requires.   Bankruptcy Rule 9006 shall apply to all computations of time periods prescribed or allowed by this Combined Plan and Disclosure Statement unless otherwise set forth herein or provided by the Bankruptcy Court.

## III. BACKGROUND

On the Petition Date, the Debtors Filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code initiating these Chapter 11 Cases.  Following the Petition Date, the Debtors remained in possession of their assets and management of their businesses as Debtors in Possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

### A.    Overview of the Debtors' Business

1.    **Description of the Debtors' Operations**

SDI Solutions is a privately-held company headquartered in Chicago, Illinois with a financial institution services group located in Charleston, South Carolina.  SDI Solutions also has offices in Washington DC, Los Angeles, and Dallas. As of the Petition Date, SDI Solutions was in the security system and IT industry, and provided advanced security systems integration and managed services, ranging from strategic advisory services on system selection to long-term operational and technical support for clients' physical security/IT systems and infrastructure.

SDI Solutions' customers included Governmental Units and the numerous agencies that are regulated by them, such as airports, port authorities, utilities, financial institutions, and commercial enterprises.  SDI Solutions' expertise included designing, implementing, and/or managing, among other things, security IT managed services, video surveillance systems, access control, advanced security systems monitoring, identity management, and enterprise systems integration.

SDI Solutions' predecessor was founded in 1989 as an information services division of Environmental Systems Design, Inc., a premier building engineering firm.  In 1996, the division emerged from the parent as System Development.Integration, LLC with a focus on providing information technology solutions and advisory services to Governmental Units and various entities governed by them.

On June 18, 2013, System Development.Integration, LLC acquired I-Sys Corporation in order to expand its business into the private sector and, in August 2013, System Development.Integration acquired X7 Systems Integration, a Washington, D.C.-based integration company.  Effective January 1, 2015, System Development.Integration, Orion Systems Group LLC (formerly d/b/a X7 Systems Integration), and SDI-isys, LLC merged to form SDI Solutions.

2.    **The Debtors' Organizational Structure**

SDI Opco holds 100% of the membership interests SDI Solutions.  GC-SDI Holdco, Inc., a non-debtor, holds a 93.89% membership interest in SDI Opco, with certain individual non-debtors holding the remaining 6.11% membership interests in SDI Opco.

### B.    The Debtors' Prepetition Capital Structure

In June 2013, SDI Solutions entered into the Prepetition Credit Agreement with Fifth Third Bank, as lender.  Pursuant to the Prepetition Credit Agreement, Fifth Third Bank agreed to make a consolidated term loan to SDI Solutions in the aggregate amount of $9,000,000 (the "**Prepetition Term Loan**") and extend a revolving line of credit facility to SDI Solutions in an amount not to exceed $8,000,000 (the "**Prepetition Revolving Commitment**" and, together with the Prepetition Term Loan, the "**Prepetition Loans**").  SDI Solutions' obligations under the Prepetition Credit Agreement were guaranteed by SDI Opco pursuant to a Guaranty, dated as of August 10, 2012 (as amended, restated, reaffirmed, or supplemented from time to time, the "**Prepetition Opco Guaranty**").

- 16 -

As security for the SDI Solutions' obligations under the Prepetition Credit Agreement and SDI Opco's obligations under the Opco Guaranty, each Debtor granted to Fifth Third Bank a Lien on substantially all of each Debtor's Assets, including, with respect to SDI Opco, a pledge and security interest in its membership interests in SDI Solutions.

In February 2016, pursuant to a Loan Purchase and Assumption Agreement by and between Fifth Third Bank, as seller, and PGV, as buyer, PGV purchased from Fifth Third Bank all of Fifth Third Bank's rights, titles, obligations, and interests in, to, and under the Prepetition Credit Documents, and thereafter became the Prepetition Lender under the Prepetition Credit Documents.

As of the Petition Date, the aggregate amount outstanding in connection with the Prepetition Term Loan was approximately $7,870,000 and the aggregate amount outstanding in connection with the Prepetition Revolving Commitment was approximately $5,220,000.

## C.    Events Precipitating the Chapter 11 Filing

Over the course of the two years preceding the Petition Date, the Debtors experienced significant liquidity issues that hindered their ability to make payments in the ordinary course of business. Revenues declined in part due to the expiration of certain key contracts, revised terms on certain renewed contracts that were less favorable for the Debtors than prior contracts, and unexpected delays in 2015 in plans to rebuild the Debtors' sales force.

In addition, the Debtors were unable to successfully integrate the Washington D.C. operations following the acquisition thereof in August 2013, and the Debtors experienced substantial losses on various large lump sum contracts that were assigned in connection with the acquisition. As a result, the Debtors ultimately determined that the Washington D.C. operations were not viable in the long term, and such operations were discontinued effective in the second half of 2015.

After careful consideration and consultation with their advisors, including Gulf Atlantic, which, at the time, was providing restructuring advisory services to the Debtors, the Debtors determined that it was necessary to pursue a restructuring or financing transaction with one or more potential purchasers or other financing or strategic partners. Beginning in November 2015, the Debtors, together with their advisors, identified and contacted more than thirty (30) potential strategic or financial partners regarding a potential financing, sale, or other restructuring transaction. Non-disclosure agreements were executed by thirteen (13) of such parties, and a confidential information memorandum prepared by the Debtors and their advisors containing information regarding, among other things, the Debtors' background and overview, financial performance and projections, and potential transaction scenarios, were distributed to each party executing a non-disclosure agreement. In addition, the Debtors and their advisors provided these parties with access to a dataroom containing various documents and information regarding the Debtors, their businesses, and finances.

The Debtors and their advisors were in regular contact with these entities and facilitated such entities' due diligence efforts; however, the Debtors were unable to reach an agreement with any party regarding a potential sale or financing transaction. The Debtors,

- 17 -

however, identified some parties, including PGV, that expressed interest in pursuing a transaction directly with Fifth Third Bank to purchase and acquire Fifth Third Bank's rights and interests under the Prepetition Credit Documents. PGV and others negotiated such a transaction directly with Fifth Third Bank, and the Debtors and their advisors cooperated with and facilitated any due diligence requests.

In February 2016, PGV entered into an agreement with Fifth Third Bank pursuant to which PGV acquired all of Fifth Third Bank's rights, titles, obligations, and interests under and in connection with the Prepetition Credit Documents. Upon consummation of PGV's transactions with Fifth Third Bank and due to the Debtors' dire liquidity situation, the Debtors immediately commenced negotiations with PGV regarding funding needs and a potential sale or other restructuring transaction. The parties engaged in extensive, arm's length negotiations and ultimately were able to reach an agreement regarding the terms of a stalking horse asset purchase agreement involving a sale transaction pursuant to section 363 of the Bankruptcy Code pursuant to which PGV agreed to serve as the stalking horse purchaser, subject to higher or otherwise better offers.

The consideration provided under the stalking horse asset purchase agreement consisted of a Credit Bid with respect to a portion of PGV's Secured Claims against the Debtors, the assumption by PGV of certain liabilities set forth in the stalking horse asset purchase agreement, and the payment of all Cure costs relating to Executory Contracts to be assumed and assigned to PGV.

The Debtors and PGV also reached an agreement on the terms of a postpetition financing facility, described in more detail below, providing for certain advances to the Debtors under a revolving credit facility to fund the Debtors' operating expenses during the Chapter 11 Cases and the costs and expenses of administering the Chapter 11 Cases, all in accordance with a certain budget.

The Chapter 11 Cases were then commenced on the Petition Date—*i.e.*, March 13, 2016.

## D.    **The Chapter 11 Cases**

The following is a brief description of certain material events that have occurred during these Chapter 11 Cases.

### 1.    **First Day Orders (other than the DIP Orders)**

On the Petition Date, in addition to the voluntary petitions for relief Filed by the Debtors, the Debtors Filed a number of motions and applications (collectively, the "**First Day Motions**") seeking certain "first day" relief. A summary of the relief sought and obtained pursuant to the First Day Motions is set forth below:

- **Joint Administration Motion.** Following consideration of the Debtors' Motion for an Order Directing Joint Administration of these Cases Pursuant to Fed. R. Bankr. P.1015(b) [Docket No. 3], the Bankruptcy

Court entered an Order [Docket No. 28] authorizing the joint administration of the Chapter 11 Cases for procedural purposes only.

- **Consolidated Creditor List Motion.** Following consideration of the Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to File (A) A Consolidated List of Creditors in Lieu of Submitting a Separate Mailing Matrix for Each Debtor, and (B) A Consolidated List of the Debtors Twenty Largest Unsecured Creditors, and (II) Approving the Manner of Serving the Notice of Commencement [Docket No. 4], the Bankruptcy Court entered an Order [Docket No. 29], among other things, authorizing the Debtors to submit a consolidated list of creditors and File a consolidated list of the Debtors' twenty largest unsecured creditors.

- **Application to Retain Donlin Recano.** Following consideration of the Debtors' Application for an Order Authorizing Employment and Retention of Donlin, Recano & Company, Inc. as Claims and Noticing Agent for the Debtors Pursuant to 28 U.S.C. § 156(c), 11 U.S.C.§ 105(a), Federal Rule of Bankruptcy Procedure 2002(f), and Local Bankruptcy Rule 2002-1(f) [Docket No. 5], the Bankruptcy Court entered an Order [Docket No. 30] authorizing the Debtors to retain Donlin Recano as Claims Agent in the Chapter 11 Cases.[3]

- **Cash Management Motion.** Following consideration of the Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing the Continued Use of the Debtors Cash Management System, Existing Bank Accounts, and Business Forms, and (II) Extending the Time to Comply with the Requirements of Section 345(b) of the Bankruptcy Code [Docket No. 6], the Bankruptcy Court entered interim and final Orders [Docket Nos. 31 and 85] that, among other things, (i) authorized the Debtors to continue to use (a) their current cash management system, and (b) their existing bank accounts, checks and business forms, including authorizing the Debtors to open and close certain bank accounts; (ii) waived certain bank account and related requirements of the U.S. Trustee; and (iii) authorized all banks participating in the cash management system to honor certain transfers and charge bank fees and certain other amounts.

- **Employee Wages/Benefits Motion.** Following consideration of the Debtors' Motion for Entry of Interim and Final Orders Authorizing Debtors to Pay Prepetition Wages, Compensation, and Employee Benefits [Docket No. 7], the Bankruptcy Court entered interim and final Orders [Docket Nos. 32 and 86] authorizing the Debtors to, among other things, pay and honor certain prepetition employee obligations, including

---

[3]   Additionally, on April 25, 2015, the Bankruptcy Court entered an Order [Docket No. 154] authorizing the Debtors to retain Donlin Recano to serve as administrative agent to the Debtors in providing certain administrative services falling outside the scope of 28 U.S.C. § 156(c).

prepetition payroll obligations, reimbursable expenses, and benefit plan obligations.

- **Utilities Motion.** Following consideration of the Debtors' Motion for Interim and Final Orders (I) Approving Debtors' Proposed Form of Adequate Assurance of Payment, (II) Establishing Procedures for Resolving Objections by Utility Companies, and (III) Prohibiting Utility Companies from Altering, Refusing, or Discontinuing Service [Docket No. 8], the Bankruptcy Court entered interim and final Orders [Docket Nos. 33 and 87] authorizing and approving the provision of adequate assurance of payment to the Debtors' utility service providers under section 366 of the Bankruptcy Code, while allowing the Debtors to avoid the threat of imminent termination of their utility services from those utility companies.

- **Insurance Motion.** Following consideration of the Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Maintain Existing Insurance Policies and Pay All Insurance Obligations Arising Thereunder, and (B) Renew, Revise, Extend, Supplement, Change, or Enter Into New Insurance Policies, and (II) Granting Certain Related Relief [Docket No. 9], the Bankruptcy Court entered interim and final Orders [Docket Nos. 35 and 88] authorizing the Debtors to, among other things, pay any outstanding obligations under the Debtors' existing insurance policies and renew, revise, extend, supplement, change, or enter into new insurance policies.

- **Tax Motion.** Following consideration of the Debtors' Motion for Interim and Final Orders Authorizing the Debtors to Pay Certain Prepetition Taxes and Fees [Docket No. 10], the Bankruptcy Court entered interim and final Orders [Docket Nos. 34 and 89] authorizing the Debtors to, among other things, pay prepetition taxes in the ordinary course of their business.

2. **Appointment of Creditors' Committee**

On March 24, 2016, the U.S. Trustee appointed the Creditors' Committee consisting of the following five (5) members: (a) I-sys Corp.; (b) AP Adler BDP LLC; (c) March Networks, Inc.; (d) Inoc LLC; and (e) Derek Radoski. On April 14, 2016, Inoc LLC notified counsel to the Creditors' Committee and the U.S. Trustee of its resignation from the Creditors' Committee. No additional member was appointed by the U.S. Trustee to replace Inoc LLC on the Creditors' Committee.

3. **Employment of Professionals and Advisors**

On April 5, 2016, the Bankruptcy Court entered an order [Docket No. 90] authorizing the Debtors to retain Gulf Atlantic as financial advisor to the Debtors effective as of the Petition Date. Additionally, on April 25, 2016, the Bankruptcy Court entered an order

CASE 16-10627-CSS

[Docket No. 153] authorizing the Debtors to retain DLA Piper LLP (US) as general bankruptcy counsel to the Debtors effective as of the Petition Date.

On May 9, 2016, the Bankruptcy Court entered orders [Docket Nos. 200, 201, and 202] authorizing the Creditors' Committee to retain the following professionals effective as of March 24, 2016: (i) Arent Fox LLP as co-counsel to the Creditors' Committee; (ii) Womble Carlyle Sandridge & Rice, LLC as co-counsel to the Creditors' Committee; and (iii) EisnerAmper LLP as financial advisor to the Creditors' Committee.

4.      **Schedules and Section 341(a) Meeting of Creditors**

On April 19, 2016, the Debtors Filed their Schedules.  On April 22, 2016, the U.S. Trustee conducted the meeting of creditors in these Chapter 11 Cases pursuant to section 341(a) of the Bankruptcy Code.

5.      **Postpetition Financing and Cash Collateral Orders**

On the Petition Date, the Debtors also Filed the DIP Financing Motion.  On March 16, 2016, the Bankruptcy Court entered the Interim DIP Order, among other things, authorizing the Debtors to execute and perform under the Postpetition Credit Documents, incur postpetition debt thereunder up to an aggregate amount of $1.7 million, use cash collateral in accordance with the Interim DIP Order and an agreed budget, and granting certain related relief.

On April 5, 2016, the Bankruptcy Court entered an amendment to the Interim DIP Order, authorizing the Debtors to incur postpetition debt up to an aggregate amount of $4.1 million, and scheduling a final hearing for April 29, 2016, to consider the relief requested in the DIP Financing Motion on a final basis.

Following its formation, the Creditors' Committee, PGV, and the Debtors, and each of their respective advisors, engaged in extensive, arms'-length, good faith negotiations regarding, among other things, the Debtors' request for postpetition financing.  Ultimately, and as discussed in more detail below, the parties negotiated and agreed to the terms of a proposed final order on the DIP Financing Motion, which was submitted to the Bankruptcy Court and entered on May 3, 2016 (*i.e.*, the Final DIP Order), and which incorporated the terms of the Global Settlement.  Under the Final DIP Order, the Debtors were authorized to, among other things, borrow up to the full amount of the postpetition commitments under the Postpetition Credit Documents and use such funds in accordance with the terms of the Final DIP Order, Postpetition Credit Documents, and the Approved Budget annexed to the Final DIP Order, including to repay in full all outstanding obligations under the Prepetition Credit Documents. Accordingly, all of PGV's claims under and in connection with the Prepetition Credit Documents have been satisfied and paid in full and the Debtors have no remaining payment obligations thereunder.

Without the funds provided under the Postpetition Credit Documents, the Debtors would not have had sufficient available sources of working capital and financing to, among other things, continue operating in the Chapter 11 Cases and effectuate the orderly 363 Sale of their Assets. Thus, entry of the Interim DIP Order and the Final DIP Order were necessary to preserve, maintain, and enhance the value of the Debtors' Assets for the benefit of the Estates.

- 21 -

6.      **Sale of Substantially All of the Debtors' Assets**

a.      Marketing Process and Bidding Procedures Order

Prior to the Petition Date, and due to the Debtors' liquidity constraints, the Debtors, after consultation with their advisors, determined it was necessary to pursue a sale or restructuring transaction with one or more potential purchasers or other financing or strategic partners. Accordingly, the Debtors, with the assistance of their advisors, including Gulf Atlantic, conducted a marketing process to explore a broad range of strategic financing and sale options for the Debtors and their Assets. Despite the marketing efforts over an approximate four-month period prior to the Petition Date, no valid offers were submitted for a sale transaction involving the Debtors' assets.

Following its acquisition of all asserted claims, liens, rights and interests of Fifth Third under the Prepetition Credit Documents, the Debtors negotiated and entered into a stalking horse asset purchase agreement with PGV as the Purchaser. On the Petition Date, the Debtors Filed the 363 Sale Motion seeking, among other things, entry of the Bid Procedures Order (a) approving the Bid Procedures in connection with the sale of substantially all of the Debtors' Assets, (b) authorizing the Debtors to enter into the stalking horse purchase agreement, subject to higher or otherwise better offers, (c) approving procedures relating to the assumption and assignment of Executory Contracts, (d) scheduling an auction and sale approval hearing, and (e) granting related relief.

On April 5, 2016, after extensive negotiations among the Debtors, PGV, and the Creditors' Committee, the Bankruptcy Court entered the Bid Procedures Order, among other things, (i) approving the Bid Procedures, (ii) approving a bid deadline of May 9, 2016 at 5:00 p.m. (ET), (iii) scheduling an auction, in the event more than one Qualified Bid (as defined in the Sale Motion) was timely received, for May 12, 2016 at 10:00 a.m. (ET), and (iii) scheduling a hearing for May 16, 2016 to consider approval of a sale transaction with the Successful Bidder (as defined in the Sale Motion).

Following the Petition Date, the Debtors and their advisors continued their marketing efforts, and Gulf Atlantic contacted more than ninety entities—including those identified by the Creditors' Committee—to advise them of the proposed sale process in the Chapter 11 Cases, provide additional marketing materials, and determine if any possessed any interest in pursuing a sale transaction with the Debtors. Notwithstanding the marketing efforts, no Qualified Bid (other than the stalking horse bid of the Purchaser) was submitted on or before the bid deadline. Accordingly, the Debtors cancelled the auction and the Purchaser was named the Successful Bidder.

b.      363 Sale Order and Sale of Assets to the Purchaser

On May 16, 2016, the Bankruptcy Court entered the 363 Sale Order authorizing and approving, among other things, the 363 Sale Agreement and the sale and transfer of the Acquired Assets to the Purchaser in accordance therewith. The Debtors anticipate that the 363 Sale will be consummated on or about May 31, 2016, or as soon thereafter as is reasonably

practicable.  The terms of the 363 Sale are consistent with and cannot be in derogation of the terms of the Global Settlement.

7.      **Global Settlement**

As noted above, following its formation, the Creditors' Committee engaged in extensive arm's-length, good faith negotiations with respect to the Debtors' proposed postpetition financing arrangement and the sale process.  These negotiations culminated in a global settlement among the parties (the "**Global Settlement**") that served as the foundation for this Combined Plan and Disclosure Statement.

The Global Settlement provides for, among other things,

- the allocation by PGV of $500,000 in Cash from its collateral or other property to be used by the Liquidation Trust in accordance with this Combined Plan and Disclosure Statement, including to make Distributions to Holders of Allowed General Unsecured Claims;

- an agreement by PGV not to assert any Lien on various Claims and Causes of Action, including the Retained Avoidance Actions and the D&O Claims, and the transfer of such Claims and Causes of Action to the Liquidation Trust;

- PGV forgoing and waiving any right to receive a Distribution on account of its Postpetition Lender Deficiency Claim, which will enhance any recoveries for other Holders of Allowed General Unsecured Claims;

- a withdrawal by the Creditors' Committee of any objection to, among other things, the entry of the Final DIP Order and PGV's right to Credit Bid up to the amount of its asserted Secured Claims in connection with the 363 Sale;

- the assumption and payment by PGV, in connection with the 363 Sale, of all post-petition sales and use tax liabilities of the Debtors and the Estates, all post-petition unpaid accounts payable of the Debtors incurred in the ordinary course of business, and all unpaid Allowed Administrative Expense Claims under section 503(b)(9) of the Bankruptcy Code, in the aggregate estimated amount of approximately $950,000; and

- in connection with the 363 Sale, the assumption by the Debtors and assignment to PGV of a significant number of Executory Contracts and the payment by PGV of all Cure Costs related thereto.

The Debtors believe that the Global Settlement and 363 Sale provide for the satisfaction in full of all or substantially all Allowed Administrative Expenses Claims, other than Compensation and Reimbursement Claims and Statutory Fees, which are being satisfied in accordance with the terms of this Combined Plan and Disclosure Statement.

On May 3, 2016, the Debtors Filed a motion on an expedited basis seeking approval of the Global Settlement pursuant to sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 9019.  Following a hearing on May 16, 2016, the Bankruptcy Court entered the Global Settlement Order approving the Global Settlement.

8.    **Rejection of Executory Contracts**

On May 9, 2016, the Debtors Filed a motion seeking to establish procedures for the rejection of Executory Contracts not assumed by the Debtors and assigned to the Purchaser in connection with the 363 Sale.  Under such proposed procedures, upon determining that one or more Executory Contracts should be rejected, the Debtors may File and serve a notice on the counterparties to such Executory Contracts with respect to the rejection setting forth, among other things, the effective date of the rejection and procedures for counterparties to File objections to the rejection.  The Filing of such motion is without prejudice to the Debtors' right to seek to reject any Executory Contracts by separate motion.

## IV. CONFIRMATION AND VOTING

A.    **Confirmation Procedure**

1.    **Plan Confirmation Hearing**

The Bankruptcy Code, Bankruptcy Rules, and Local Rules require the Bankruptcy Court, after appropriate notice, to hold a hearing on confirmation of this Combined Plan and Disclosure Statement.  On, or as promptly as practicable after the Filing of this Combined Plan and Disclosure Statement, the Debtors will request, pursuant to the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, including Local Rule 3017-2, that the Bankruptcy Court schedule the Plan Confirmation Hearing to consider, among other things, final approval of this Combined Plan and Disclosure Statement under section 1125 of the Bankruptcy Code and confirmation of this Combined Plan and Disclosure Statement under section 1129 of the Bankruptcy Code.  Notice of the Plan Confirmation Hearing will be provided to all known Creditors, Interest Holders, and other parties in interest.  The Plan Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement of the adjourned date made at the Plan Confirmation Hearing or any subsequent adjourned Plan Confirmation Hearing.

Any objection to confirmation of this Combined Plan and Disclosure Statement must be in writing, must conform to the Bankruptcy Rules, must set forth the name of the objector, the nature and amount of Claims or Interests held or asserted by the objector against the Debtors, the basis for the objection and the specific grounds of the objection, and must be Filed with the Bankruptcy Court, with a copy to chambers, together with proof of service thereof, and served upon:  (i) counsel to the Debtors, DLA Piper LLP (US), 1251 Avenue of the Americas, New York, New York 10020 (Attn: Thomas R. Califano, Esq. and Daniel G. Egan, Esq.) and 1201 North Market Street, Suite 2100, Wilmington, Delaware 19801 (Attn: Stuart M. Brown, Esq. and Kaitlin MacKenzie Edelman, Esq.); (ii) counsel to the Committee, Arent Fox LLP, 1675 Broadway, New York, New York 10019 (Attn: George P. Angelich, Esq. and Beth M. Brownstein, Esq.) and 1717 K Street, NW, Washington, DC 20006 (Attn: Jeffrey N. Rothleder,

Esq.) and Womble Carlyle Sandridge & Rice, LLP, 222 Delaware Avenue, Suite 1501, Wilmington, Delaware 19801 (Attn: Matthew P. Ward, Esq. and Ericka F. Johnson, Esq.); (iii) the Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox #35, Wilmington, Delaware, 19899 (Attn: Timothy J. Fox, Jr., Esq.); (iv) counsel to PGV, Greenberg Traurig, LLP, 77 West Wacker Drive, Suite 3100, Chicago, Illinois 60601 (Attn: Nancy A. Peterman, Esq.) and Greenberg Traurig LLP, The Nemours Building, 1007 North Orange Street, Suite 1200, Wilmington, Delaware 19801 (Attn: Dennis A. Meloro, Esq.); and (v) such other parties as the Bankruptcy Court may order.

Bankruptcy Rule 9014 governs objections to confirmation of this Combined Plan and Disclosure Statement. **UNLESS AN OBJECTION TO CONFIRMATION OF THIS COMBINED PLAN AND DISCLOSURE STATEMENT IS TIMELY SERVED UPON THE PARTIES LISTED ABOVE AND FILED WITH THE BANKRUPTCY COURT, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT IN DETERMINING WHETHER TO CONFIRM THIS COMBINED PLAN AND DISCLOSURE STATEMENT.**

2.    **Requirements for Confirmation**

The Bankruptcy Court will confirm this Plan only if it meets all the applicable requirements of section 1129 of the Bankruptcy Code. Among the requirements for confirmation in these Chapter 11 Cases is that this Plan be (i) accepted by all impaired Classes of Claims and Interests or, if rejected by an impaired Class, that this Plan "does not discriminate unfairly" against and is "fair and equitable" with respect to such Class; and (ii) feasible. The Bankruptcy Court must also find, among other things, that:

a.    this Plan has classified Claims and Interests in a permissible manner;

b.    this Plan complies with the technical requirements of chapter 11 of the Bankruptcy Code; and

c.    this Plan has been proposed in good faith.

3.    **Best Interests of Creditors Test**

The Bankruptcy Code requires that, with respect to an impaired class of claims or interests, each holder of an impaired claim or interest in such class either (i) accept the plan or (ii) receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the amount (value) such holder would receive or retain if the debtor was liquidated under chapter 7 of the Bankruptcy Code on the effective date.

The costs of a chapter 7 liquidation would necessarily include fees payable to a trustee in bankruptcy, as well as fees likely to be payable to attorneys, advisors, and other professionals that such a chapter 7 trustee may engage to carry out its duties under the Bankruptcy Code. Other costs of liquidating the Debtors' Estates would include the expenses incurred during the bankruptcy cases and allowed by the Bankruptcy Court in the chapter 7 cases. The foregoing types of claims, costs, expenses, and fees that may arise in a chapter 7 liquidation case would be paid in full before payments would be made towards chapter 11

- 25 -

administrative, priority, and unsecured claims.  In addition, in a chapter 7 liquidation, Holders of Allowed General Unsecured Claims may no longer receive the benefit of the terms of the Global Settlement reached between the Debtors, the Creditors' Committee, and PGV that are incorporated into this Combined Plan and Disclosure Statement, including, most notably, with respect to the treatment of the Postpetition Lender Deficiency Claim.  Without the benefit of these settlements and resolutions, any recoveries for Holders of Allowed General Unsecured Claims in a chapter 7 liquidation would be significantly diluted.

Accordingly, the Debtors believe that in a chapter 7 liquidation, Holders of Claims and Interests would receive less than such Holders would receive under this Combined Plan and Disclosure Statement.  There can be no assurance, however, as to values that would actually be realized in a chapter 7 liquidation, nor can there be any assurance that a Bankruptcy Court would accept the Debtors' conclusions or concur with such assumptions in making its determinations under section 1129(a)(7) of the Bankruptcy Code.

4.      **Feasibility**

Pursuant to section 1129(a)(11) of the Bankruptcy Code, a debtor must demonstrate that a bankruptcy court's confirmation of a plan is not likely to be followed by the liquidation or need for further financial reorganization of the debtor under the plan, unless such liquidation or reorganization is proposed under the plan.  Pursuant to this Combined Plan and Disclosure Statement, the Debtors' remaining Assets (after the transfer of the Acquired Assets in connection with the 363 Sale) are being transferred to the Liquidation Trust to be liquidated and distributed to the Liquidation Trust's Beneficiaries. Therefore, as this is a liquidating Plan, the Bankruptcy Court's confirmation of this Combined Plan and Disclosure Statement will not be followed by liquidation or the need for any further reorganization.

5.      **Classification of Claims and Interests**

Section 1122 of the Bankruptcy Code requires this Combined Plan and Disclosure Statement to place a Claim or Interest in a particular Class only if such Claim or Interest is substantially similar to the other Claims or Interests in such Class. This Combined Plan and Disclosure Statement creates separate Classes to treat the Postpetition Lender Secured Claims, Other Secured Claims, Other Priority Claims, SDI Solutions General Unsecured Claims, SDI Opco General Unsecured Claims, Postpetition Lender Deficiency Claims, Subordinated Other Claims, SDI Solutions Interests, and SDI Opco Interests. The Debtors believe that this Combined Plan and Disclosure Statement's classification scheme places substantially similar Claims or Interests in the same Class and thus meets the requirements of section 1122 of the Bankruptcy Code.

6.      **Impaired Claims or Interests**

Pursuant to section 1126 of the Bankruptcy Code, only the Holders of Claims in Classes "Impaired" by this Combined Plan and Disclosure Statement and receiving a Distribution under this Combined Plan and Disclosure Statement may vote on this Combined Plan and Disclosure Statement. Pursuant to section 1124 of the Bankruptcy Code, a Class of Claims may be "Impaired" if this Combined Plan and Disclosure Statement alters the legal,

- 26 -

equitable, or contractual rights of the Holders of such Claims or Interests treated in such Class. The Holders of Claims not Impaired by this Combined Plan and Disclosure Statement are deemed to accept this Combined Plan and Disclosure Statement and do not have the right to vote on this Combined Plan and Disclosure Statement. The Holders of Claims or Interests in any Class that will not receive any Distribution or retain any property pursuant to this Combined Plan and Disclosure Statement are deemed to reject this Combined Plan and Disclosure Statement and do not have the right to vote.

7.      **Eligibility to Vote on this Combined Plan and Disclosure Statement**

Unless otherwise ordered by the Bankruptcy Court, only Holders of Allowed Claims in Classes 1, 4A, 4B, 5, and 6 may vote on this Combined Plan and Disclosure Statement. In order to vote on this Combined Plan and Disclosure Statement, you must hold an Allowed Claim in Class 1, 4A, 4B, 5, or 6, or be the Holder of a Claim that has been temporarily Allowed for voting purposes only under Bankruptcy Rule 3018(a).

8.      **Procedure/Voting Deadlines**

In order for your Ballot to count, you must (1) properly complete, date, and execute the Ballot and (2) deliver the Ballot to the Balloting Agent by either (a) regular mail to the Balloting Agent at the following address: Donlin, Recano & Company, Inc., re: SDI Solutions LLC, *et al.*, P.O. Box 192016, Blythebourne Station, Brooklyn, NY 11219; (b) overnight courier or hand delivery to the Balloting Agent at the following address: Donlin, Recano & Company, Inc., re: SDI Solutions LLC, *et al.*, 6201 15th Avenue, Brooklyn, NY 11219.

The Balloting Agent must RECEIVE original ballots on or before _____, **2016, at 5:00 p.m.** (prevailing Eastern Time) (the "**Voting Deadline**"). Except as otherwise ordered by the Bankruptcy Court, you may not change your vote once a Ballot is submitted to the Balloting Agent.

Any Ballot that is timely received, that contains sufficient information to permit the identification of the claimant and that is cast as an acceptance or rejection of this Combined Plan and Disclosure Statement will be counted and cast as an acceptance or rejection, as the case may be, of this Combined Plan and Disclosure Statement.

Holders of Claims who do not want to provide the releases to the Released Parties set forth in Section XII.E.2. herein must affirmatively indicate so by checking the "opt out" box on the Ballot.

The following Ballots will not be counted or considered for any purpose in determining whether this Combined Plan and Disclosure Statement has been accepted or rejected by the class in which such Holder holds a Claim or Interest:

a.   any Ballot submitted that is received after the Voting Deadline, unless the Debtors or the Court grant an extension of the Voting Deadline with respect to such Ballot;

- 27 -

b.  any Ballot that is illegible or contains insufficient information to permit the identification of the claimant;

c.  any Ballot cast by a Person or Entity that does not hold a Claim in a Class that is entitled to vote to accept or reject this Combined Plan and Disclosure Statement;

d.  any Ballot cast for a Claim designated or determined as unliquidated, contingent, or disputed or as zero or unknown in amount and for which no Bankruptcy Rule 3018(a) motion has been Filed by the Bankruptcy Rule 3018(a) motion deadline;

e.  any Ballot timely received that is cast in a manner that indicates neither acceptance nor rejection of this Combined Plan and Disclosure Statement or that indicates both acceptance and rejection of this Combined Plan and Disclosure Statement;

f.  any Ballot not bearing an original signature; or

g.  any Ballot that is submitted by facsimile or other electronic communication.

9.  **Acceptance of this Combined Plan and Disclosure Statement**

As a Creditor, your acceptance of this Combined Plan and Disclosure Statement is important. In order for this Combined Plan and Disclosure Statement to be accepted by an impaired Class of Claims, a majority in number (*i.e.*, more than half) and two-thirds in dollar amount of the Claims voting (of each Impaired Class of Claims) must vote to accept this Combined Plan and Disclosure Statement. At least one impaired Class of Creditors, excluding the votes of insiders, must actually vote to accept this Combined Plan and Disclosure Statement. The Debtors and the Creditors' Committee urge that you vote to accept this Combined Plan and Disclosure Statement. **YOU ARE URGED TO COMPLETE, DATE, SIGN AND PROMPTLY RETURN THE BALLOT. PLEASE BE SURE TO COMPLETE THE BALLOT PROPERLY AND LEGIBLY IDENTIFY THE EXACT AMOUNT OF YOUR CLAIM AND THE NAME OF THE CREDITOR**.

10.  **Elimination of Vacant Classes**

Any Class of Claims or Interests that does not contain, as of the date of commencement of the Plan Confirmation Hearing, a Holder of an Allowed Claim or Interest, or a Holder of a Claim temporarily allowed under Bankruptcy Rule 3018, shall be deemed deleted from this Combined Plan and Disclosure Statement for all purposes, including for purposes of determining acceptance of this Combined Plan and Disclosure Statement by such Class under section 1129(a)(8) of the Bankruptcy Code.

- 28 -

## V.  TREATMENT OF UNCLASSIFIED CLAIMS

### A.  Administrative Expense Claims

Except to the extent that a Holder of an Allowed Administrative Expense Claim agrees to less favorable treatment with the Debtors or Liquidation Trustee, each Holder, if any, of an Allowed Administrative Expense Claim (other than Compensation and Reimbursement Claims and Statutory Fees) whose Claim has not been assumed or paid by the Purchaser in connection with the 363 Sale or otherwise satisfied prior to the Effective Date shall receive Cash in an amount equal to the unpaid amount of such Allowed Administrative Expense Claim on the later of the Effective Date and the date on which such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is reasonably practicable from Cash on hand of the Debtors as of the Effective Date or otherwise from the Plan Funding Amount.  To be eligible to receive Distributions under this Combined Plan and Disclosure Statement on account of an Administrative Expense Claim that is not otherwise expressly Allowed by this Combined Plan and Disclosure Statement, (i) a request for payment of an Administrative Expense Claim incurred during the Initial Administrative Expense Claim Period must have been or be Filed on or before the Initial Administrative Expense Claim Bar Date, and (ii) a request for payment of an Administrative Expense Claim incurred during the Second Administrative Expense Claim Period must have been or be Filed on or before the Second Administrative Expense Claim Bar Date.  Any Administrative Expense Claim that is not timely asserted by the applicable Administrative Expense Claim Bar Date in accordance herewith shall be deemed disallowed under this Combined Plan and Disclosure Statement and shall be forever barred against the Debtors, the Estates, the Liquidation Trust, or any of their Assets or property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process, or act to collect, offset, recoup, or recover such Claim.

### B.  Priority Tax Claims

Each Holder of an Allowed Priority Tax Claim, if any, shall receive in full satisfaction of such Allowed Priority Tax Claim, in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, regular installment payments in Cash over a period ending not later than five (5) years after the Petition Date of a total value, as of the Effective Date, equal to the Allowed amount of such Priority Tax Claim, payable from Cash on hand of the Debtors as of the Effective Date or otherwise from the Plan Funding Amount.  The Liquidation Trustee reserves the right to prepay such Allowed Claim at any time under this option.  On the Effective Date, any Liens securing any Allowed Priority Tax Claim shall be deemed released, terminated, and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization, or approval of any Person.

### C.  Compensation and Reimbursement Claims

All Professionals seeking allowance and payment of Compensation and Reimbursement Claims shall (i) File their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred in the Chapter 11 Cases by the date that is forty-five (45) days after the Effective Date and (ii) be paid, from the

Professional Fee Carveout Reserve, (a) the unpaid amounts as is Allowed by the Bankruptcy Court within five (5) Business Days after the date that such Claim is Allowed by Order of the Bankruptcy Court, or (b) upon such other terms as may be mutually agreed upon between the Holder of such an Allowed Compensation and Reimbursement Claim and the Liquidation Trustee, in each case subject to the Final DIP Order and Global Settlement Order. Any Compensation and Reimbursement Claim that is not timely asserted in accordance herewith shall be deemed disallowed under this Combined Plan and Disclosure Statement and shall be forever barred against the Debtors, the Estates, the Liquidation Trust, or any of their Assets or property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.

**D.    Statutory Fees**

Statutory Fees shall be paid on the Effective Date and thereafter, as such fees may thereafter accrue and be due and payable in accordance with the applicable schedule for payment of such fees. Any Statutory Fees relating to any period of time prior to the date of closing of the 363 Sale shall be paid by PGV. Any Statutory Fees relating to the period of time from the date of closing of the 363 Sale to the Effective Date shall be paid by the Debtors or Liquidation Trustee, as applicable, from the Professional Fee Carveout Reserve solely to the extent there are any remaining funds in such reserve after payment of all Allowed Compensation and Reimbursement Claims, and in the event there are insufficient funds in such reserve, such Statutory Fees shall be paid from funds in the Liquidation Trust Operating Reserve. Statutory Fees relating to any period of time after the Effective Date shall be paid by the Liquidation Trustee from funds in the Liquidation Trust Operating Reserve.

## VI. CLASSIFICATION OF CLAIMS AND INTERESTS; ESTIMATED RECOVERIES

Claims—other than Administrative Expense Claims, Compensation and Reimbursement Claims, Priority Tax Claims, and Statutory Fees—are classified for all purposes, including voting, confirmation, and Distribution pursuant to this Combined Plan and Disclosure Statement, as follows:

| Class | Type | Status Under Plan | Voting Status |
|-------|------|-------------------|---------------|
| 1 | Postpetition Lender Secured Claim | Impaired | Entitled to Vote |
| 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 3 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 4A | SDI Solutions General Unsecured Claims | Impaired | Entitled to Vote |
| 4B | SDI Opco General Unsecured Claims | Impaired | Entitled to Vote |
| 5 | Postpetition Lender Deficiency Claim | Impaired | Entitled to Vote |
| 6 | Subordinated Other Claims | Impaired | Entitled to Vote |

- 30 -

| 7A | SDI Solutions Interests | Impaired | Deemed to Reject |
| 7B | SDI Opco Interests | Impaired | Deemed to Reject |

## VII.   TREATMENT OF CLAIMS AND INTERESTS

### A.   Treatment of Claims

1.   **Class 1 – Postpetition Lender Secured Claim**

a.   Classification

Class 1 consists of the Postpetition Lender Secured Claim.

b.   Impairment and Voting

Class 1 is Impaired by this Combined Plan and Disclosure Statement and is entitled to vote to accept or reject this Combined Plan and Disclosure Statement.

c.   Treatment

In full and final satisfaction, settlement, release, and discharge of the Postpetition Lender Secured Claim, PGV, as Holder of the Postpetition Lender Secured Claim, (a) in accordance with the 363 Sale Documents, has received (or will receive) a transfer and assignment of all Acquired Assets in exchange for, among other things, a Credit Bid of a portion of the Postpetition Lender Secured Claim, and (b) with respect to any remaining portion of the Postpetition Lender Secured Claim and Assets other than Acquired Assets, PGV, as Holder of the Postpetition Lender Secured Claim, has agreed to release all Liens it may have on all Liquidation Trust Assets and any other Assets of the Debtors as of the Effective Date, without prejudice to the Postpetition Lender Deficiency Claim.  Upon occurrence of the Effective Date, all Liens in favor of PGV, as Holder of the Postpetition Lender Secured Claim, shall be deemed released, terminated, and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule, or the vote, consent, authorization, or approval of any Person.

The Postpetition Lender Secured Claim shall be deemed an Allowed Claim under this Combined Plan and Disclosure Statement.  Any Postpetition Lender Deficiency Claim shall be classified in Class 5 (and shall be deemed an Allowed Claim under this Combined Plan and Disclosure Statement) and will receive the treatment described in Section VII.A.6.c. below.

2.   **Class 2 – Other Secured Claims**

a.   Classification

Class 2 consists of all Other Secured Claims, if any.

b.      Impairment and Voting

Class 2 is Unimpaired. Holders of Allowed Class 2 Other Secured Claims are deemed to have accepted this Combined Plan and Disclosure Statement and, thus, are not entitled to vote to accept or reject this Combined Plan and Disclosure Statement.

c.      Treatment

Except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable or different treatment, on, or as soon as reasonably practical after, the Effective Date or the date such Claim becomes an Allowed Other Secured Claim, each Holder of such Allowed Other Secured Claim shall receive, as the Debtors or the Liquidation Trustee, as applicable, determines, (i) the Collateral securing such Allowed Other Secured Claim (to the extent such Collateral is not subject to Liens securing the Postpetition Lender Secured Claims under the Final DIP Order, or, if such Collateral is subject to such Liens, to the extent that the Lien securing such Allowed Other Secured Claim is senior to such Liens), or (ii) such other treatment as renders such Holder's Allowed Other Secured Claim Unimpaired in accordance with section 1124(1) or (2) of the Bankruptcy Code; provided, however, that any deficiency Claims of Holders of Class 2 Other Secured Claims shall not constitute Class 2 Other Secured Claims and shall be treated as Class 4A SDI Solutions General Unsecured Claims or Class 4B SDI Opco General Unsecured Claims hereunder, as applicable.

3.      **Class 3 – Other Priority Claims**

a.      Classification

Class 3 consists of all Other Priority Claims.

b.      Impairment and Voting

Class 3 is Unimpaired. Holders of Allowed Other Priority Claims in Class 3 shall be deemed to have accepted this Combined Plan and Disclosure Statement and, thus, are not entitled to vote to accept or to reject this Combined Plan and Disclosure Statement.

c.      Treatment

Except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable or different treatment, on, or as soon as reasonably practicable after, the later of the Effective Date or the date such Other Priority Claim becomes an Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim shall receive payment in full, from Cash on hand of the Debtors as of the Effective Date or otherwise from the Plan Funding Amount, in full satisfaction, settlement, and release of, and in exchange for, such Allowed Other Priority Claim.

- 32 -

4. **Class 4A – SDI Solutions General Unsecured Creditors**

 a. <u>Classification</u>

Class 4A consists of all SDI Solutions General Unsecured Claims.

 b. <u>Impairment and Voting</u>

 Class 4A is Impaired, and Holders of Allowed SDI Solutions General Unsecured Claims in Class 4A are entitled to vote to accept or to reject this Combined Plan and Disclosure Statement.

 c. <u>Treatment</u>

 Except to the extent that a Holder of an Allowed SDI Solutions General Unsecured Claim has agreed to a different treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of each Allowed SDI Solutions General Unsecured Claim, each Holder of an Allowed SDI Solutions General Unsecured Claim will receive on account of such Allowed SDI Solutions General Unsecured Claim such Holder's Pro Rata Share of the beneficial interest in the Liquidation Trust and, as a Beneficiary of the Liquidation Trust, shall receive, on a distribution date, its Pro Rata Share of net Cash derived from the Liquidation Trust Assets available for Distribution as provided under this Combined Plan and Disclosure Statement and Liquidation Trust Agreement, until all Allowed General Unsecured Claims in Classes 4A and 4B are paid in full or the Liquidation Trust Assets are exhausted; provided, however, that all Distributions to Holders of Allowed SDI Solutions General Unsecured Claims shall be subject to the Liquidation Trustee first paying in full all Liquidation Trust Operating Expenses and/or reserving in the Liquidation Trust Operating Reserve for such Liquidation Trust Operating Expenses as reasonable and appropriate.

 Because of the consolidation under Local Rule 1017-3 as set forth in Section XV.O. hereof, all Intercompany Claims shall be cancelled as of the Effective Date and neither Debtor will receive any recovery on account of any such Intercompany Claim. Accordingly, Intercompany Claims are not separately classified hereunder.

5. **Class 4B – SDI Opco General Unsecured Creditors**

 a. <u>Classification</u>

Class 4B consists of all SDI Opco General Unsecured Claims.

 b. <u>Impairment and Voting</u>

 Class 4B is Impaired, and Holders of Allowed SDI Opco General Unsecured Claims in Class 4B are entitled to vote to accept or to reject this Combined Plan and Disclosure Statement.

- 33 -

c.      Treatment

Except to the extent that a Holder of an Allowed SDI Opco General Unsecured Claim has agreed to a different treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of each Allowed SDI Opco General Unsecured Claim, each Holder of an Allowed SDI Opco General Unsecured Claim will receive on account of such Allowed SDI Opco General Unsecured Claim such Holder's Pro Rata Share of the beneficial interest in the Liquidation Trust and, as a Beneficiary of the Liquidation Trust, shall receive, on a distribution date, its Pro Rata Share of net Cash derived from the Liquidation Trust Assets available for Distribution as provided under this Combined Plan and Disclosure Statement and Liquidation Trust Agreement, until all Allowed General Unsecured Claims in Classes 4A and 4B are paid in full or the Liquidation Trust Assets are exhausted; provided, however, that all Distributions to Holders of Allowed SDI Opco General Unsecured Claims shall be subject to the Liquidation Trustee first paying in full all Liquidation Trust Operating Expenses and/or reserving in the Liquidation Trust Operating Reserve for such Liquidation Trust Operating Expenses as reasonable and appropriate.

Because of the consolidation under Local Rule 1017-3 as set forth in Section XV.O. hereof, all Intercompany Claims shall be cancelled as of the Effective Date and neither Debtor will receive any recovery on account of any such Intercompany Claim.  Accordingly, Intercompany Claims are not separately classified hereunder.

6.      **Class 5 – Postpetition Lender Deficiency Claim**

a.      Classification

Class 5 consists of the Postpetition Lender Deficiency Claim.

b.      Impairment and Voting

Class 5 is Impaired, and the Holder of the Allowed Postpetition Lender Deficiency Claim in Class 5 is entitled to vote to accept or to reject this Combined Plan and Disclosure Statement.

c.      Treatment

The Postpetition Lender Deficiency Claim shall be deemed an Allowed Claim under this Combined Plan and Disclosure Statement; however, PGV, as Holder of the Postpetition Lender Deficiency Claim, will not share in any Distribution from the Liquidation Trust on account of such Postpetition Lender Deficiency Claim and, under this Combined Plan and Disclosure Statement, PGV expressly waives its right to Distributions on account of such Claim.

7.      **Class 6 – Subordinated Other Claims**

      a.      <u>Classification</u>

Class 6 consists of all Subordinated Other Claims, if any. The Debtors do not believe that there are any Subordinated Other Claims.

      b.      <u>Impairment and Voting</u>

Class 6 is Impaired, and Holders of Allowed Subordinated Other Claims in Class 6, if any, are entitled to vote to accept or to reject this Combined Plan and Disclosure Statement.

      c.      <u>Treatment</u>

In full and final satisfaction, settlement, release, and discharge of each Allowed Subordinated Other Claim, each Holder of an Allowed Subordinated Other Claim will receive on account of such Allowed Subordinated Other Claim such Holder's Pro Rata Share of the beneficial interest in the Liquidation Trust and, as a Beneficiary of the Liquidation Trust, shall receive, on a distribution date—if and solely to the extent all Allowed General Unsecured Claims in Classes 4A and 4B are first paid in full and, after such payment in full, Liquidation Trust Assets remain in the Liquidation Trust—its Pro Rata Share of net Cash derived from such remaining Liquidation Trust Assets available for Distribution as provided under this Combined Plan and Disclosure Statement and Liquidation Trust Agreement, until all Allowed Subordinated Other Claims are paid in full or the Liquidation Trust Assets are exhausted; provided, however, that all Distributions to Holders of Allowed Subordinated Other Claims shall be subject to the Liquidation Trustee first paying in full all Liquidation Trust Operating Expenses and/or reserving in the Liquidation Trust Operating Reserve for such Liquidation Trust Operating Expenses as reasonable and appropriate.

8.      **Class 7A – SDI Solutions Interests**

      a.      <u>Classification</u>

Class 7A consists of all SDI Solutions Interests.

      b.      <u>Impairment and Voting</u>

Class 7A is Impaired. Because Holders of SDI Solutions Interests will receive no Distribution under this Combined Plan and Disclosure Statement, Class 7A shall be deemed to have voted to reject this Combined Plan and Disclosure Statement.

      c.      <u>Treatment</u>

On the Effective Date, all SDI Solutions Interests (including any and all options or rights to exercise warrants or options or to otherwise acquire any SDI Solutions Interests) shall be cancelled, deemed terminated, and of no further force and effect, and the Holders of SDI Solutions Interests shall not receive or retain any Distribution or property on account of such SDI Solutions Interests.

EAST\123901513.4

9. **Class 7B – SDI Opco Interests**

a. <u>Classification</u>

Class 7B consists of all SDI Opco Interests.

b. <u>Impairment and Voting</u>

Class 7B is Impaired. Because Holders of SDI Opco Interests will receive no Distribution under this Combined Plan and Disclosure Statement, Class 7B shall be deemed to have voted to reject this Combined Plan and Disclosure Statement.

c. <u>Treatment</u>

On the Effective Date, all SDI Opco Interests (including any and all options or rights to exercise warrants or options or to otherwise acquire any SDI Opco Interests) shall be cancelled, deemed terminated, and of no further force and effect, and the Holders of SDI Opco Interests shall not receive or retain any Distribution or property on account of such SDI Opco Interests.

## B.    <u>Modification of Treatment of Claims and Interests</u>

The Debtors, in consultation with the Creditors' Committee, reserve the right to modify the treatment of any Allowed Claim or Interest in any manner adverse only to the Holder of such Claim or Interest at any time after the Effective Date upon the consent of the Holder of the Claim or Interest whose Allowed Claim or Interest, as the case be, is being adversely affected.

## C.    <u>Cramdown and No Unfair Discrimination</u>

In the event that any impaired Class of Claims or Interests rejects this Plan or is deemed to have rejected this Plan, the Debtors hereby request, without any delay in the occurrence of the Plan Confirmation Hearing or Effective Date, that the Bankruptcy Court confirm this Plan in accordance with section 1129(b) of the Bankruptcy Code with respect to such non-accepting Class, in which case this Combined Plan and Disclosure Statement shall constitute a motion for such relief.

## VIII.    PROVISIONS REGARDING THE LIQUIDATION TRUST

## A.    <u>Appointment of the Liquidation Trustee</u>

The Liquidation Trustee shall be selected by the Creditors' Committee and shall be identified by the Debtors in the Plan Supplement. At the Plan Confirmation Hearing, the Bankruptcy Court shall consider and, if appropriate, ratify the selection of the Liquidation Trustee. All compensation for the Liquidation Trustee shall be paid from the Liquidation Trust Assets, as may be reserved by the Liquidation Trustee in the Liquidation Trust Operating Reserve, in accordance with the Liquidation Trust Agreement. The approved Person shall serve as the Liquidation Trustee upon execution of the Liquidation Trust Agreement on the Effective

Date.  The Liquidation Trustee shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. The Liquidation Trust Agreement shall be provided in the Plan Supplement.  On the Effective Date, all Beneficiaries of the Liquidation Trust shall be deemed to have ratified and become bound by the terms and conditions of the Liquidation Trust Agreement.  In the event that the Liquidation Trustee resigns or is removed, terminated, or otherwise unable to serve as the Liquidation Trustee, then a successor shall be appointed as set forth in the Liquidation Trust Agreement. Any successor Liquidation Trustee appointed shall be bound by and comply with the terms of this Combined Plan and Disclosure Statement, the Plan Confirmation Order, and the Liquidation Trust Agreement.

## B.    Creation of Liquidation Trust

On the Effective Date, the Liquidation Trustee shall sign the Liquidation Trust Agreement and, in its capacity as Liquidation Trustee, accept all Liquidation Trust Assets on behalf of the Beneficiaries thereof, and be authorized to obtain, seek the turnover, liquidate, and collect all of the Liquidation Trust Assets not in its possession or control.  The Liquidation Trust will then be deemed created and effective without any further action by the Bankruptcy Court or any Person as of the Effective Date.  The Liquidation Trust shall be established for the primary purpose of liquidating the Liquidation Trust Assets and for making Distributions in accordance with this Combined Plan and Disclosure Statement and the Liquidation Trust Agreement, with no objective to continue or engage in the conduct of a trade or business, except only in the event and to the extent necessary to, and consistent with, the liquidating purpose of the Liquidation Trust.

## C.    Beneficiaries of Liquidation Trust

The Holders of Allowed Claims entitled to Distributions hereunder shall be the Beneficiaries of the Liquidation Trust.  Such Beneficiaries shall be bound by the Liquidation Trust Agreement.   The interests of the Beneficiaries in the Liquidation Trust shall be uncertificated and shall be nontransferable except upon death of the interest holder or by operation of law.

## D.    Vesting and Transfer of Assets to the Liquidation Trust

Pursuant to section 1141(b) of the Bankruptcy Code, the Liquidation Trust Assets shall vest in the Liquidation Trust free and clear of all Claims and Liens; provided, however, that the Liquidation Trustee may abandon or otherwise not accept any Liquidation Trust Assets that the Liquidation Trustee believes, in good faith, to have no value to, or will be unduly burdensome to, the Liquidation Trust.  Any Liquidation Trust Assets that the Liquidation Trustee so abandons or otherwise does not accept shall not be property of the Liquidation Trust.  As of the Effective Date, all Liquidation Trust Assets vest in the Liquidation Trust and all Assets dealt with in this Combined Plan and Disclosure Statement shall be free and clear of all Liens, Claims, and Interests except as otherwise specifically provided in this Combined Plan and Disclosure Statement or in the Plan Confirmation Order.

### E.    Certain Powers and Duties of the Liquidation Trust and Liquidation Trustee

1.    **General Powers of the Liquidation Trustee**

The Liquidation Trustee shall have the power and authority to perform the acts described in the Liquidation Trust Agreement (subject to approval by the Bankruptcy Court where applicable), in addition to any powers granted by law or conferred to it by any other provision of this Combined Plan and Disclosure Statement, including without limitation any set forth herein, provided however, that enumeration of the following powers shall not be considered in any way to limit or control the power and authority of the Liquidation Trustee to act as specifically authorized by any other provision of this Combined Plan and Disclosure Statement, the Liquidation Trust Agreement, and/or any applicable law, and to act in such manner as the Liquidation Trustee may deem necessary or appropriate, including, without limitation, to discharge all obligations assumed by the Liquidation Trustee or provided herein and to conserve and protect the Liquidation Trust or to confer on the Beneficiaries the benefits intended to be conferred upon them by this Combined Plan and Disclosure Statement.  The powers, rights, and responsibilities of the Liquidation Trustee shall be specified in the Liquidation Trust Agreement and shall include the authority, power, and responsibility to: (a) receive, manage, invest, supervise, and protect Liquidation Trust Assets; (b) pay taxes or other obligations incurred by the Liquidation Trust and issue to employees or other Persons, and/or file with the appropriate Governmental Units, applicable tax and wage returns and forms; (c) retain and compensate, without further order of the Bankruptcy Court, the services of employees, professionals, and consultants to advise and assist in the administration, prosecution and distribution of Liquidation Trust Assets; (d) calculate and implement Distributions of Liquidation Trust Assets; (e) investigate, prosecute, compromise, and settle, in accordance with the specific terms of the Liquidation Trust Agreement and without further order of the Court, Retained Causes of Action vested in the Liquidation Trust; (f) resolve issues involving Claims and Interests in accordance with this Combined Plan and Disclosure Statement, including the power to object to Claims, and to subordinate and recharacterize Claims by objection, motion, or adversary proceeding; (g) undertake all administrative functions of the Chapter 11 Cases, including the payment of Statutory Fees and the ultimate closing of the Chapter 11 Cases and (h) take action pursuant to such other powers as may be vested in or assumed by the Liquidation Trustee pursuant to this Combined Plan and Disclosure Statement, the Liquidation Trust Agreement, Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of this Combined Plan and Disclosure Statement.

Except as expressly set forth in this Combined Plan and Disclosure Statement and in the Liquidation Trust Agreement, the Liquidation Trustee, on behalf of the Liquidation Trust, shall have absolute discretion to pursue or not to pursue any Retained Causes of Action as it determines is in the best interests of the Liquidation Trust's Beneficiaries and consistent with the purposes of the Liquidation Trust, and shall have no liability for the outcome of his or her decision, other than those decisions constituting gross negligence or willful misconduct.  The Liquidation Trustee may incur any reasonable and necessary expenses in liquidating and converting the Liquidation Trust Assets to Cash.  The Liquidation Trust is the successor to the Debtors, the Estates, and the Debtors' right to books and records.  The Liquidation Trustee shall be granted standing, authority, power, and right to assert, prosecute, and/or settle the Retained Causes of Action, including making a claim under the D&O Policies, employment practices

liability, or fiduciary liability insurance policies based upon its powers as a bankruptcy-appointed representative of the Debtors' Estates with the same or similar abilities possessed by insolvency trustees, receivers, examiners, conservators, liquidators, rehabilitators, or similar officials; provided, however, that any recovery from Claims and Causes of Action covered under the D&O Policies shall be limited to the amount of coverage available under the D&O Policies and from the insurance carriers under applicable law, and amounts in excess of the then remaining coverage shall not, for the avoidance doubt, be asserted against or collected from any current or former director or officer of the Debtors personally or from such individual's personal assets; provided, further, that the Liquidation Trust may pursue on D&O Claims in excess of the amount of coverage.  Retained Causes of Action will vest in the Liquidation Trust; however, there can be no assurance as to the outcome of such Retained Causes of Action or the dollar amount of any recovery that will be obtained by the Liquidation Trust.

2.    **Books and Records**

On the Effective Date, the Liquidation Trust shall: (a) take possession of all books, records, and files of the Debtors and the Estates that were not sold and transferred in connection with the 363 Sale; and (b) provide for the retention and storage of such books, records, and files until such time as the Liquidation Trust determines, in accordance with the Liquidation Trust Agreement, that retention of same is no longer necessary or beneficial.

3.    **Investments of Cash**

The Liquidation Trust may invest Cash (including any earnings thereon or proceeds therefrom) as permitted by section 345 of the Bankruptcy Code or in other prudent investments, provided, however, that such investments are permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.

4.    **Costs and Expenses of Administration of the Liquidation Trust**

All Liquidation Trust Operating Expenses shall be the responsibility of and paid by the Liquidation Trust in accordance with the Liquidation Trust Agreement from the Liquidation Trust Assets.

5.    **Reporting**

In no event later than thirty (30) Business Days after the end of the first full month following the Effective Date and on a quarterly basis thereafter until all Cash in the Liquidation Trust has been released or paid out in accordance with this Combined Plan and Disclosure Statement, the Liquidation Trustee shall File a report setting forth the amounts, recipients, and dates of all Distributions made by the Liquidation Trustee under this Combined Plan and Disclosure Statement through each applicable reporting period.

**F.**    **Federal Income Tax Treatment of the Liquidation Trust for the Liquidation Trust Assets**

For federal income tax purposes, it is intended that the Liquidation Trust be classified as a liquidating trust under section 301.7701-4 of the Treasury regulations and that such trust be owned by its Beneficiaries. Accordingly, for federal income tax purposes, it is intended that the beneficiaries be treated as if they had received a distribution from the Estates of an undivided interest in each of the Liquidation Trust Assets (to the extent of the value of their respective share in the applicable assets) and then contributed such interests to the Liquidation Trust, and the Liquidation Trust's Beneficiaries will be treated as the grantors and owners thereof.

The Liquidation Trust shall be responsible for filing all federal, state, and local tax returns for the Debtors and the Liquidation Trust. The Liquidation Trust shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions made by the Liquidation Trust shall be subject to any such withholding and reporting requirements. The Liquidation Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements including, without limitation, requiring that, as a condition to the receipt of a Distribution, the Holder of an Allowed Claim complete the appropriate IRS Form W-8 or IRS Form W-9, as applicable to each Holder. Notwithstanding any other provision of this Combined Plan and Disclosure Statement, (a) each Holder of an Allowed Claim that is to receive a Distribution from the Liquidation Trust shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income and other tax obligations, on account of such Distribution, and (b) no Distribution shall be made to or on behalf of such Holder pursuant to this Combined Plan and Disclosure Statement unless and until such Holder has made arrangements satisfactory to the Liquidation Trustee to allow it to comply with its tax withholding and reporting requirements. Any property to be distributed by the Liquidation Trust shall, pending the implementation of such arrangements, be treated as an undeliverable Distribution to be held by the Liquidation Trustee, as the case may be, until such time as the Liquidation Trustee is satisfied with the Holder's arrangements for any withholding tax obligations.

**G.**    **Term of Liquidation Trust**

The Liquidation Trustee shall be discharged and the Liquidation Trust shall be terminated, at such time as (i) all Disputed Claims have been resolved, (ii) all of the Liquidation Trust Assets have been liquidated, (iii) all duties and obligations of the Liquidation Trustee under the Liquidation Trust Agreement have been fulfilled, (iv) all Distributions required to be made by the Liquidation Trust under this Combined Plan and Disclosure Statement and the Liquidation Trust Agreement have been made, and (v) the Chapter 11 Cases have been closed; provided, however, that in no event shall the Liquidation Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion within the six-month period prior to the fifth anniversary (or the end of any extension period approved by the Bankruptcy Court), determines that a fixed period extension (not to exceed one (1) year, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Liquidation Trust as a

liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidation Trust Assets.

**H.     Limitation of Liability of the Liquidation Trustee**

The Liquidation Trust shall indemnify the Liquidation Trustee and his or her professionals against any losses, liabilities, expenses (including attorneys' fees and disbursements), damages, taxes, suits, or claims that the Liquidation Trustee or his or her professionals may incur or sustain by reason of being or having been a Liquidation Trustee or professionals of the Liquidation Trustee for performing any functions incidental to such service; provided, however, the foregoing shall not relieve the Liquidation Trustee or his or her professionals from liability for bad faith, willful misconduct, reckless disregard of duty, criminal conduct, gross negligence, fraud, or self-dealing, or, in the case of an attorney professional and, as required under Rule 1.8(h)(1) of the New York State Rules of Professional Conduct, malpractice.

## IX. ADDITIONAL MEANS FOR IMPLEMENTATION

**A.     Preservation of Right to Conduct Investigations**

The preservation for the Liquidation Trust of any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 is necessary and relevant to the liquidation and administration of the Liquidation Trust Assets. Accordingly, any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 held by the Debtors prior to the Effective Date shall vest with the Liquidation Trust and shall continue until dissolution of the Liquidation Trust.

**B.     Prosecution and Resolution of Retained Causes of Action**

From and after the Effective Date, prosecution and settlement of all Retained Causes of Action shall be the sole responsibility of the Liquidation Trust pursuant to this Combined Plan and Disclosure Statement and the Plan Confirmation Order. From and after the Effective Date, the Liquidation Trust shall have exclusive rights, powers, and interests of the Estates to pursue, settle, or abandon such Retained Causes of Action as the sole representative of the Estates pursuant to section 1123(b)(3) of the Bankruptcy Code. All Retained Causes of Action that are not expressly released or waived under this Combined Plan and Disclosure Statement are reserved and preserved and vest in the Liquidation Trust in accordance with this Combined Plan and Disclosure Statement. No Person may rely on the absence of a specific reference in this Combined Plan and Disclosure Statement or the Plan Supplement to any Retained Cause of Action against it as any indication that the Debtors or Liquidation Trustee will not pursue any and all available Retained Causes of Action against such Person. The Liquidation Trustee expressly reserves all Retained Causes of Action, except for any Retained Causes of Action against any Person that are expressly released or waived under this Combined Plan and Disclosure Statement, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Retained Causes of Action upon, after, or as a consequence of confirmation or consummation of this Combined Plan and Disclosure Statement.

- 41 -

**C.**     **Effectuating Documents and Further Transactions**

Upon entry of the Plan Confirmation Order, the Debtors and the Liquidation Trustee shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, consents, certificates, resolutions, programs, and other agreements, instruments, and/or documents, and take such acts and actions as may be reasonably necessary or appropriate to effectuate, implement, consummate, and/or further evidence the terms and conditions of this Combined Plan and Disclosure Statement and any transactions described in or contemplated by this Combined Plan and Disclosure Statement.   The Debtors or Liquidation Trustee, as applicable, may, and all Holders of Allowed Claims or Interests receiving Distributions pursuant to this Combined Plan and Disclosure Statement, at the request or direction of the Debtors or Liquidation Trustee, as applicable, shall, from time to time, prepare, execute, and deliver any agreements or documents, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Combined Plan and Disclosure Statement.

**D.**     **Authority to Act**

Prior to, on, or after the Effective Date (as appropriate), all matters expressly provided for under this Combined Plan and Disclosure Statement that would otherwise require approval of the members, managers, or other owners, direct or indirect, of the Debtors shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as applicable) pursuant to applicable law, without any further vote, consent, approval, authorization, or other action by such members, managers, or other owners of the Debtors or notice to, order of, or hearing before, the Bankruptcy Court.

**E.**     **Cancellation of Documents**

On the Effective Date, except to the extent otherwise provided in this Combined Plan and Disclosure Statement, any and all notes, instruments, debentures, certificates and other documents evidencing Claims against and Interests in the Debtor including, without limitation, the Postpetition Credit Documents (to the extent not already extinguished, cancelled, and terminated), shall be deemed automatically extinguished, cancelled, and of no further effect with the Debtors having no continuing obligations thereunder, and shall be deemed rejected and terminated.

**F.**     **Funding of Liabilities and Distributions**

On the Effective Date, the Debtors and the Debtors' Estates shall transfer the Liquidation Trust Assets to the Liquidation Trust to be utilized, administered, and distributed by the Liquidation Trustee in accordance with the terms and conditions of this Combined Plan and Disclosure Statement, the Plan Confirmation Order and the Liquidation Trust Agreement.

**G.**     **Corporate Action; Effectuating Documents; Further Transactions**

On the Effective Date, all matters and actions provided for under this Combined Plan and Disclosure Statement that would otherwise require approval of the directors, officers, members, or managers of the Debtors shall be deemed to have been authorized and effective in all respects as provided herein and shall be taken without any requirement for further action by

- 42 -

the directors, officers, members, and managers of the Debtors. The Debtors are authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Combined Plan and Disclosure Statement.

## H.    Release of Liens

Except as otherwise provided in this Combined Plan and Disclosure Statement, or in any contract, instrument, release, or other agreement or document created pursuant to this Combined Plan and Disclosure Statement, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be deemed fully released and discharged without any further action of any party, including, but not limited to, further order of the Bankruptcy Court or filing updated schedules or statements typically filed pursuant to the Uniform Commercial Code or other applicable law.

## I.    Exemption from Securities Laws

Under section 1145 of the Bankruptcy Code, the issuance of beneficial interests in the Liquidation Trust under this Combined Plan and Disclosure Statement shall be exempt from registration under the Securities Act of 1933, as amended, and all applicable state and local laws requiring registration of securities.

## J.    Exemption from Certain Taxes and Fees

Pursuant to section 1146(a) of the Bankruptcy Code, the making or delivery of any instrument or transfer from a Debtor to the Liquidation Trust, or to any other Person pursuant to this Combined Plan and Disclosure Statement, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp tax, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment, and the Plan Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the forgoing instruments or other documents without the payment of any such tax or governmental assessment.

## K.    Privileges as to Certain Causes of Action

Effective as of the Effective Date, all Privileges of the Debtors relating to the Liquidation Trust Assets shall be deemed transferred, assigned, and delivered to the Liquidation Trust, without waiver or release, and shall vest with the Liquidation Trust. The Liquidation Trustee shall hold and be the beneficiary of all such Privileges and entitled to assert such Privileges. No such Privilege shall be waived by disclosures to the Liquidation Trustee of the Debtors' documents, information, or communications subject to attorney-client privileges, work product protections or other immunities (including those related to common interest or joint defense with third parties), or protections from disclosure held by the Debtors. The Debtors' Privileges relating to the Liquidation Trust Assets will remain subject to the rights of third parties under applicable law, including any rights arising from the common interest doctrine, the joint defense doctrine, joint attorney-client representation, or any agreement.  Nothing contained

- 43 -

herein or in the Plan Confirmation Order, nor any Professional's compliance herewith and therewith, shall constitute a breach of any Privileges of the Debtors.

**L.      Insurance Policies**

Nothing in this Combined Plan and Disclosure Statement, the Plan Confirmation Order, or the Liquidation Trust Agreement, alters the rights and obligations of the Debtors (and their Estates) and the Debtors' insurers (and third-party claims administrators) under the Insurance Policies or modifies the coverage or benefits provided thereunder or the terms and conditions thereof or diminishes or impairs the enforceability of the Insurance Policies. All of the Debtors' rights and their Estates' rights under any Insurance Policy to which the Debtors and/or the Debtors' Estates may be beneficiaries shall vest with the Liquidation Trust for the benefit of the Beneficiaries of the Liquidation Trust and all of the beneficiaries of such policies.

**M.      Filing of Monthly and Quarterly Reports and Payment of Statutory Fees**

The Filing of the final monthly operating report (for the month in which the Effective Date occurs) and all subsequent quarterly Liquidation Trust reports shall be the responsibility of the Liquidation Trustee. All Statutory Fees shall be payable as set forth in Section V.D. hereof  and such obligation shall continue until such time as the Chapter 11 Cases are closed, dismissed, or converted.

**N.      Closing of the Chapter 11 Cases**

When all Liquidation Trust Assets have been liquidated and converted into Cash and such Cash has been distributed in accordance with the Liquidation Trust Agreement and the Plan Confirmation Order, the Liquidation Trustee shall seek authority from the Bankruptcy Court to close the Chapter 11 Cases in accordance with the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

## X.  PROVISIONS GOVERNING DISTRIBUTIONS UNDER THIS COMBINED PLAN AND DISCLOSURE STATEMENT

**A.      Distribution Record Date**

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors or its agents shall be deemed closed, and there shall be no further changes in the record Holders of any of the Claims or Interests. The Debtors or the Liquidation Trustee shall have no obligation to recognize any ownership transfer of the Claims or Interests occurring after the Distribution Record Date. The Debtors, the Liquidation Trustee, or any party responsible for making Distributions shall be entitled to recognize and deal for all purposes under this Combined Plan and Disclosure Statement only with those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

B. **Method of Payment**

Unless otherwise expressly agreed, in writing, all Cash payments to be made pursuant to this Combined Plan and Disclosure Statement shall be made by check drawn on a domestic bank or an electronic wire transfer.

C. **Claims Objection Deadline**

The Liquidation Trustee, and any other party in interest to the extent permitted pursuant to section 502(a) of the Bankruptcy Code, shall File and serve any objection to any Claim no later than the Claims Objection Deadline; provided, however, the Claims Objection Deadline may be extended by the Bankruptcy Court from time to time upon motion and notice by the Liquidation Trustee for cause.

D. **No Distribution Pending Allowance**

Notwithstanding any other provision of this Combined Plan and Disclosure Statement or the Liquidation Trust Agreement, no Distribution of Cash or other property shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Claim are resolved by Final Order or as otherwise permitted by this Combined Plan and Disclosure Statement or the Liquidation Trust Agreement.

E. **Reserve of Cash Distributions**

On any date that Distributions are to be made under the terms of this Combined Plan and Disclosure Statement, the Liquidation Trustee shall reserve Cash or property equal to 100% of the Cash or property that would be distributed on such date on account of Disputed Claims as if each such Disputed Claim were an Allowed Claim but for the pendency of a dispute with respect thereto. Such Cash or property shall be held in trust for the benefit of the Holders of all such Disputed Claims pending determination of their entitlement thereto.

F. **Distribution After Allowance**

Within the later of (i) seven (7) Business Days after such Claim becomes an Allowed Claim and (ii) thirty (30) days after the expiration of the Claims Objection Deadline, the Liquidation Trustee shall distribute all Cash or other property, including any interest, dividends or proceeds thereof, to which a Holder of an Allowed Claim is then entitled.

G. **Delivery of Distributions**

Except as provided herein, Distributions to Holders of Allowed Claims shall be made: (i) at the addresses set forth on the respective proofs of Claim Filed by such Holders; (ii) at the addresses set forth in any written notices of address changes delivered to the Liquidation Trustee after the date of any related proof of Claim; or (iii) at the address reflected in the Schedules if no proof of Claim is Filed and the Liquidation Trustee has not received a written notice of a change of address.

If the Distribution to the Holder of any Claim is returned to the Liquidation Trustee as undeliverable, no further Distribution shall be made to such Holder unless and until the Liquidation Trustee is notified in writing of such Holder's then current address. Undeliverable Distributions shall remain in the possession of the Liquidation Trustee until the earlier of (i) such time as a Distribution becomes deliverable or (ii) such undeliverable Distribution becomes an Unclaimed Distribution pursuant to Section X.H. of this Combined Plan and Disclosure Statement.

Until such time as an undeliverable Distribution becomes an Unclaimed Distribution, within thirty (30) days after the end of each calendar quarter following the Effective Date, or upon such other interval as the Bankruptcy Court may order, but in no event less frequently than annually, the Liquidation Trustee shall make Distributions of all Cash and property that has become deliverable during the preceding quarter. Each such Distribution shall include the net return yielded from the investment of any undeliverable Cash, from the date such Distribution would have been due had it then been deliverable to the date that such Distribution becomes deliverable.

The Liquidation Trustee shall make reasonable efforts to update or correct contact information for recipients of undeliverable Distributions, provided, however, nothing contained in this Combined Plan and Disclosure Statement shall require the Liquidation Trustee to locate any Holder or an Allowed Claim.

## H.    **Unclaimed Distributions**

Any Cash or other property to be distributed under this Combined Plan and Disclosure Statement shall revert to the Liquidation Trustee if it is not claimed by the Holder within three (3) months after the date of such Distribution. If such Cash or other property is not claimed on or before such date, the Distribution made to such Holder shall be deemed to be reduced to zero and such returned, undeliverable, or unclaimed Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code.

## I.    **Set-Off**

Except as otherwise provided herein, the Debtors and Liquidation Trustee, as applicable, retain the right to reduce any Claim by way of setoff in accordance with the Debtors' books and records. Rights of a setoff and recoupment of any Entity or Person are preserved for the purpose of asserting such rights as a defense to any Claims or Causes of Action of the Debtors, their Estates, or the Liquidation Trustee and regardless of whether such Entity or Person is the Holder of an Allowed Claim.

## J.    **Postpetition Interest**

Interest shall not accrue on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date. No prepetition Claim shall be Allowed to the extent it is for postpetition interest or other similar charges, except to the extent permitted for Holders of Secured Claims under section 506(b) of the Bankruptcy Code.

- 46 -

### K.    Distributions After Effective Date

For Disputed Claims that have not been Allowed as of the Effective Date, any Distributions made after the Effective Date to Holders of such Disputed Claims (which later become Allowed Claims after the Effective Date) shall be deemed to have been made on the Effective Date.

### L.    Distributions Free and Clear

Except as may be otherwise provided in this Combined Plan and Disclosure Statement, all Distributions hereunder shall be free and clear of any Liens, Claims, encumbrances, and other interests.

### M.    Allocation of Distributions Between Principal and Interest

To the extent that any Allowed Claim entitled to a Distribution under this Combined Plan and Disclosure Statement comprises indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

### N.    Prepayment

Except as otherwise provided herein or the Plan Confirmation Order, the Debtors and the Liquidation Trustee, as applicable, shall have the right to prepay, without penalty, all or any portion of an Allowed Claim.

## XI. EXECUTORY CONTRACTS

### A.    Rejection of Executory Contracts

On the Effective Date, all Executory Contracts not previously assumed and/or assigned (including in connection with the 363 Sale and pursuant to the 363 Sale Order, subject to the proviso below with respect to the Headquarters' Lease), not subject to a pending motion to assume and/or assign as of the Effective Date, or not rejected before the Effective Date, will be deemed rejected. The Plan Confirmation Order shall constitute an order approving such rejection as of the Effective Date; provided, however, that pursuant to the 363 Sale Documents, the Purchaser has a designation period of up to 90 days after closing of the 363 Sale to designate the Headquarters Lease as either an unexpired lease to be assumed and assigned in connection with the 363 Sale or an unexpired lease to be rejected, and a notice of designation may be Filed by the Debtors or Liquidation Trustee, as applicable, and the Headquarters Lease may be assumed and assigned or rejected, as applicable, in accordance with the 363 Sale Order.  In accordance with the 363 Sale Documents, PGV shall be directly obligated to pay all costs, obligations, and liabilities of the Debtors under any Executory Contract not subject to a Final Order approving rejection thereof as of the Plan Confirmation Date, including the Headquarters Lease and any Administrative Expense Claim in connection therewith, for the period from the closing of the 363 Sale through the effective date of the assumption and assignment or rejection, as applicable, of any such Executory Contract, including the Headquarters Lease.

- 47 -

Unless otherwise specified, each Executory Contract assumed or rejected by the Debtors shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such Executory Contract.

**B.      Deadline for Filing Proofs of Claim Relating to Executory Contracts Rejected Pursuant to this Combined Plan and Disclosure Statement**

If the rejection by the Debtors, pursuant to this Combined Plan and Disclosure Statement or otherwise, of an Executory Contract gives rise to a Rejection Damages Claim, a proof of Claim must be filed with the Claims Agent at (i) if by regular mail, Donlin, Recano & Company, Inc., re: SDI Solutions LLC, et al., P.O. Box 899, Madison Square Station, New York, NY 10010, and (ii) if by overnight courier or hand delivery, Donlin, Recano & Company, Inc., re: SDI Solutions LLC, et al., 6201 15th Avenue, Brooklyn, NY 11219, by no later than thirty (30) days after the earlier of (i) the Effective Date or (ii) the date provided in any other applicable Order of the Bankruptcy Court. Any proofs of Claim with respect to a Rejection Damages Claim not filed within such time shall be forever barred from assertion against the Debtors, the Estates, the Liquidation Trust, the Liquidation Trust Assets, and their property and such Persons holding such Claims will not receive and be barred from receiving any Distributions on account of such untimely Rejection Damages Claims, absent further order of the Bankruptcy Court.  All Rejection Damages Claims will be treated as General Unsecured Claims under this Combined Plan and Disclosure Statement and, to the extent they are deemed Allowed General Unsecured Claims, will receive the treatment afforded Allowed General Unsecured Claims.

## XII.    INJUNCTION, EXCULPATION AND RELEASES

**A.      Injunction to Protect Estate Assets**

**From and after the Effective Date, all Persons and Entities who have held, hold, or may hold Claims or rights giving rise to any equitable relief against the Debtors or the Assets or any Interests in the Debtors arising prior to the Effective Date are permanently enjoined from taking any of the following actions against the Debtors, the Estates, the Liquidation Trust, the Liquidation Trustee, or any of their respective property or assets (collectively, the "Estate Assets") on account of any such Claims or Interests: (a) commencing or continuing, in any manner or in any place, any action or proceeding seeking to collect or to recover in any manner against, or assert control or dominion over, the Estate Assets; (b) enforcing, attaching, collecting, or recovering in any manner against the Estate Assets any judgment, award, decree or order; (c) creating, perfecting, or enforcing any Lien or encumbrance against the Estate Assets; and (d) asserting a setoff unless such setoff was formally asserted in a timely Filed proof of claim or in a pleading Filed with the Bankruptcy Court prior to entry of the Plan Confirmation Order or right of subrogation of any kind against any debt, liability, or obligation due to the Debtors, except as otherwise set forth in Section X.I. of this Combined Plan and Disclosure Statement; provided, however, that such Persons and Entities shall not be precluded from exercising their rights pursuant to and consistent with the terms of this Combined Plan and Disclosure Statement, the Plan Confirmation Order, or the Liquidation Trust Agreement.**

B.    **Term of Injunctions or Stays**

**Unless otherwise provided in this Combined Plan and Disclosure Statement or Plan Confirmation Order, all injunctions or stays provided for under this Combined Plan and Disclosure Statement and ordered in the Plan Confirmation Order or pursuant to sections 105 or 362 of the Bankruptcy Code arising under or entered during the Chapter 11 Cases, or otherwise, and in existence on the Plan Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay and to the extent consistent with the terms and provisions of this Combined Plan and Disclosure Statement or the Plan Confirmation Order, as applicable.**

C.    **Injunction Against Interference with Plan**

**Upon the Bankruptcy Court's entry of the Plan Confirmation Order, all Holders of Claims and Interests, and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the Debtors', Creditors' Committee's, the Liquidation Trust's, the Liquidation Trustee's, and their respective affiliates', employees', advisors', officers', directors', members', managers', and agents' implementation or consummation of this Combined Plan and Disclosure Statement.**

D.    **Exculpation**

**Except as otherwise specifically provided in this Combined Plan and Disclosure Statement, the Released Parties shall not have or incur any liability for any Claim, action, proceeding, Cause of Action, Avoidance Action, suit, account, controversy, agreement, promise, right to legal remedies, right to equitable remedies, or right to payment arising or accruing on or after the Petition Date, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, Disputed, undisputed, secured, or unsecured and whether asserted or assertable directly or derivatively, in law, equity, or otherwise to one another or to any Claim Holder or Interest Holder, or any other party in interest, or any of their respective agents, employees, representatives, advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Chapter 11 Cases, the negotiation, solicitation, Filing, and confirmation of this Combined Plan and Disclosure Statement, the pursuit of confirmation of this Combined Plan and Disclosure Statement, the consummation of this Combined Plan and Disclosure Statement, the administration of this Combined Plan and Disclosure Statement, or the property to be liquidated and/or distributed under this Combined Plan and Disclosure Statement, except for their willful misconduct or gross negligence as determined by a Final Order of a court of competent jurisdiction, and in all respects shall be entitled to rely reasonably upon the advice of counsel with respect to their duties and responsibilities under this Combined Plan and Disclosure Statement.**

- 49 -

E.    **Releases**

1.    **Debtor Releases**

**Except as may otherwise be expressly provided in this Combined Plan and Disclosure Statement, as of the Effective Date, for good and valuable consideration, to the fullest extent permitted under applicable law, the Released Parties are deemed released and discharged by the Debtors and the Estates of and from any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action (including Avoidance Actions), and liabilities (other than the rights of the Debtors to enforce this Combined Plan and Disclosure Statement, and the contracts, instruments, releases, and other agreement or documents delivered hereunder, and liabilities arising after the Effective Date in the ordinary course of business), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise that are based in whole or part on any act omission, transaction, event, or other occurrences, whether direct or derivative, taking place on or prior to the Effective Date in connection with, or related to, the Debtors, the Estates, the Prepetition Credit Documents, the Postpetition Credit Documents, the 363 Sale Documents, the Chapter 11 Cases, and this Combined Plan and Disclosure Statement, other than with respect to the D&O Claims and Claims, Causes of Action or liabilities arising out of or relating to any act or omission of a Released Party that constitutes actual fraud, willful misconduct, or gross negligence.**

2.    **Holder Releases**

**Except as may otherwise be expressly provided in this Combined Plan and Disclosure Statement, to the fullest extent permitted under applicable law, unless affirmatively indicated otherwise by checking the "opt out" box on their Ballot, Holders of Claims that are entitled to vote on acceptance or rejection of this Combined Plan and Disclosure Statement shall be deemed to have released each Released Party of and from all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities  whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise that are based in whole or part on any act omission, transaction, event, or other occurrences, whether direct or derivative, taking place on or prior to the Effective Date in connection with, or related to the Debtors, the Estates, the Prepetition Credit Documents, the Postpetition Credit Documents, the 363 Sale Documents, the Chapter 11 Cases, and this Combined Plan and Disclosure Statement, other than with respect to the D&O Claims and Claims, Causes of Action or liabilities arising out of or relating to any act or omission of a Released Party that constitutes actual fraud, willful misconduct, or gross negligence.  For the avoidance of doubt, nothing contained in this Section shall impact the right of any Holder of an Allowed Claim to receive a Distribution on account of its Allowed Claim in accordance with this Combined Plan and Disclosure Statement.**

- 50 -

3.      **Waiver of Statutory Limitations on Releases**

Each of the parties providing the releases contained above expressly acknowledges that although ordinarily a general release may not extend to Claims or Causes of Action which the releasing party does not know or suspect to exist in its favor, which if known by it may have materially affected its settlement with the party released, they have carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or claims. Without limiting the generality of the foregoing, each releasing party expressly waives any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to claims which the claimant does not know or suspect to exist in its favor at the time of providing the release, which if known by it may have materially affected its settlement with the Released Party. The releases contained in this Combined Plan and Disclosure Statement are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen.

**F.      Necessity and Approval of Releases and Injunctions**

The releases, exculpations, and injunctions set forth in Section XII of this Combined Plan and Disclosure Statement are not severable and are integral consideration and critical parts of this Combined Plan and Disclosure Statement, and the Released Parties have relied on the efficacy and conclusive effects of such releases and injunctions and on the Bankruptcy Court's retention of jurisdiction to enforce such releases and injunctions when making concessions and exchanging consideration in connection with the Chapter 11 Cases and pursuant to this Combined Plan and Disclosure Statement. Pursuant to Bankruptcy Code sections 1123(a)(5), 1123(b)(3), and 1123(b)(6), as well as Bankruptcy Rule 9019, entry of the Plan Confirmation Order shall constitute the Bankruptcy Court's approval of the releases, exculpations, and injunctions set forth in Section XII of this Combined Plan and Disclosure Statement and shall constitute the Bankruptcy Court's finding that such releases, exculpations, and injunctions are:  (i) in exchange for the good, valuable, and reasonably equivalent consideration provided by the Released Parties, including the negotiation of the Global Settlement by and between the Debtors, PGV, and the Creditors' Committee and PGV's agreement to, among other things, provide the Plan Funding Amount and waive any right to receive a Distribution on account of the Postpetition Lender Deficiency Claim; (ii) in the best interests of the Debtors, the Estates, and Creditors; (iii) fair, equitable, and reasonable; and (iv) a bar to any of the releasing parties as set forth in this Combined Plan and Disclosure Statement asserting any Claims or Causes of Action released pursuant to such release.

**G.      Compromise and Settlement of Claims, Interests and Controversies**

Pursuant to sections 363 and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided pursuant to this Combined Plan and Disclosure Statement, the provisions of this Combined Plan and Disclosure Statement shall constitute a good faith compromise of all Claims, Interests and controversies relating to the contractual, legal and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any Distribution to be made on account of

such Allowed Claim or Interest.  The entry of the Plan Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, the Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable.

### XIII.   CONDITIONS PRECEDENT TO AND OCCURRENCE OF CONFIRMATION AND THE EFFECTIVE DATE

**A.**     **Conditions Precedent to Confirmation**

Confirmation of this Combined Plan and Disclosure Statement shall not occur, and the Plan Confirmation Order shall not be entered, until each of the following conditions precedent have been satisfied or waived:

1.     The Plan Confirmation Order shall be reasonably acceptable in form and substance to the Debtors, PGV, and the Creditors' Committee.

2.     The Plan Supplement and any other exhibits or schedules incorporated as part of this Combined Plan and Disclosure Statement are in form and substance acceptable to the Debtors, the PGV, and the Creditors' Committee.

**B.**     **Conditions Precedent to the Effective Date**

This Combined Plan and Disclosure Statement shall not become effective unless and until the following conditions shall have been satisfied or waived:

1.     The Plan Confirmation Order shall have become a Final Order in full force and effect with no stay thereof then in effect, and shall be in form and substance reasonably acceptable to the Debtors, PGV, and the Creditors' Committee.

2.     The Plan Confirmation Date shall have occurred and no request for revocation of the Plan Confirmation Order under section 1144 of the Bankruptcy Code shall have been made, or, if made, shall remain pending.

3.     The 363 Sale shall have been consummated.

4.     All actions, documents, and agreements necessary to implement this Combined Plan and Disclosure Statement, including, without limitation, all actions, documents, and agreements necessary to implement any transactions contemplated under this Combined Plan and Disclosure Statement, including the Liquidation Trust Agreement, shall have been effected or executed.

5.     The absence of any pending or threatened government action or any law that has the effect of or actually does prevent consummation of any transaction contemplated under this the absence of any pending or threatened government action or any law that has the effect of or actually does prevent consummation of any transaction contemplated under this Combined Plan and Disclosure Statement.

- 52 -

6.     The deposit of the Plan Funding Amount into a segregated account held by the Debtors to be transferred to the Liquidation Trust in accordance with this Combined Plan and Disclosure Statement.

## C.     Establishing the Effective Date

The calendar date to serve as the Effective Date shall be a Business Day of, on or promptly following the satisfaction or waiver of all conditions the Effective Date, which date will be selected by the Debtors, after reasonable consultation with PGV and the Creditors' Committee.

## D.     Effect of Failure of Conditions

If each condition to the Effective Date has not been satisfied or duly waived within ninety (90) days after the Plan Confirmation Date, then upon motion by any party in interest, made before the time that each of the conditions has been satisfied or duly waived by the Debtors, with the express written consent of PGV and the Creditors' Committee, if applicable, and upon notice to such parties in interest as the Bankruptcy Court may direct, the Plan Confirmation Order may be vacated by the Bankruptcy Court; provided, however, that notwithstanding the Filing of such motion, the Plan Confirmation Order shall not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived by the Debtors, with the written consent of PGV and the Creditors' Committee, if applicable, before the any Order granting such relief becomes a Final Order. If the Plan Confirmation Order is vacated pursuant to this Section, this Combined Plan and Disclosure Statement shall be deemed null and void in all respects and nothing contained herein shall (i) constitute a waiver or release of any Claims by or against the Debtors, or (ii) prejudice in any manner the rights of the Debtors.

## E.     Waiver of Conditions to Confirmation and Effective Date

Each of the conditions to the Effective Date may be waived, in whole or in part, by the Debtors with the written consent of PGV and the Creditors' Committee, without notice or an Order of the Bankruptcy Court.

## XIV.    RETENTION OF JURISDICTION

Notwithstanding the entry of the Plan Confirmation Order and the occurrence of the Effective Date, following the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Cases as is legally permissible, including, without limitation, such jurisdiction as is necessary to ensure that the interests and purposes of this Combined Plan and Disclosure Statement and the Liquidation Trust Agreement are carried out. The Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Cases, this Combined Plan and Disclosure Statement, and the Liquidation Trust Agreement for, among other things, the following purposes:

1.     To hear and determine any objections to Claims and to address any issues relating to Disputed Claims;

- 53 -

2. To enter and implement such Orders as may be appropriate in the event the Plan Confirmation Order is for any reason stayed, revoked, modified, or vacated;

3. To issue such Orders in aid of execution and consummation of this Combined Plan and Disclosure Statement and the Liquidation Trust Agreement;

4. To consider any amendments to or modifications of this Combined Plan and Disclosure Statement and the Liquidation Trust Agreement, to cure any defect or omission, or reconcile any inconsistency in any Order of the Bankruptcy Court, including, without limitation, the Plan Confirmation Order;

5. To hear and determine all requests for compensation and reimbursement of expenses under section 330 or 503 of the Bankruptcy Code;

6. To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Combined Plan and Disclosure Statement and the Liquidation Trust Agreement, including the releases, exculpations, and injunctions provided hereunder;

7. To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

8. To hear any other matter not inconsistent with the Bankruptcy Code;

9. To enter a final decree closing the Chapter 11 Cases;

10. To ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of this Combined Plan and Disclosure Statement and the Liquidation Trust Agreement;

11. To decide or resolve any motions, adversary proceedings, contested or litigated matters arising out of, under, or related to, the Chapter 11 Cases;

12. To issue injunctions, enter and implement other Orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the occurrence of the Effective Date or enforcement of this Combined Plan and Disclosure Statement and the Liquidation Trust Agreement;

13. To approve, as may be necessary or appropriate, any Claims settlement entered into or offset exercised by the Liquidation Trust;

14. To resolve any dispute or matter arising under or in connection with the Liquidation Trust, including any request for an extension of the term of the Liquidation Trust;

15. To determine any other matters that may arise in connection with or related to this Combined Plan and Disclosure Statement, the Plan Confirmation Order, the Liquidation Trust Agreement, or any contract, instrument, release, indenture or other

- 54 -

agreement or document created or implemented in connection with this Combined Plan and Disclosure Statement or the Liquidation Trust Agreement;

16.     To enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, exculpations, and rulings entered in connection with the Chapter 11 Cases (whether or not the Chapter 11 Cases have been closed);

17.     To resolve disputes concerning any reserves with respect to Disputed Claims or the administration thereof; and

18.     To resolve any other matter or for any purpose specified in this Combined Plan and Disclosure Statement, the Plan Confirmation Order, the Liquidation Trust Agreement, or any other document entered into in connection with any of the foregoing.

## XV.    MISCELLANEOUS PROVISIONS

### A.    Amendment or Modification of this Combined Plan and Disclosure Statement

This Combined Plan and Disclosure Statement or any exhibits hereto may be amended, modified, or supplemented by the Debtors in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code.  In addition, after the Plan Confirmation Date, the Debtors or Liquidation Trustee, as applicable, may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Combined Plan and Disclosure Statement or the Plan Confirmation Order with respect to such matters as may be necessary to carry out the purposes and effects of this Combined Plan and Disclosure Statement. The Debtors may make appropriate technical adjustments and modifications to this Combined Plan and Disclosure Statement prior to the Effective Date without further order or approval of the Bankruptcy Court.

### B.    Severability

This Combined Plan and Disclosure Statement is not severable.  Nevertheless, if, prior to the entry of the Plan Confirmation Order, any term or provision of this Combined Plan and Disclosure Statement is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Combined Plan and Disclosure Statement will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Plan Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Combined Plan and Disclosure Statement, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**C.**    **Revocation or Withdrawal of this Combined Plan and Disclosure Statement**

The Debtors, in consultation with the Creditors' Committee, reserve the right to revoke or withdraw this Combined Plan and Disclosure Statement before the Plan Confirmation Date. If the Debtors revoke or withdraw this Combined Plan and Disclosure Statement before the Plan Confirmation Date, then this Combined Plan and Disclosure Statement shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against the Debtors or the Liquidation Trustee or to prejudice in any manner the rights of the Debtors or the Liquidation Trustee in any further proceedings involving the Debtors.

**D.**    **Binding Effect**

This Combined Plan and Disclosure Statement shall be binding upon and inure to the benefit of the Debtors, the Holders of Claims, and the Holders of Interests, and their respective successors and assigns.

**E.**    **Notices**

All notices to or requests of the Debtors or Liquidation Trustee by parties in interest in connection with this Combined Plan and Disclosure Statement shall be in writing and delivered either by (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) overnight delivery, all charges prepaid, and shall be deemed to have been given when received by:

If to the Debtors:

SDI Solutions LLC
33 W. Monroe, Suite 400
Chicago, IL 60603
Attn:  David Sullivan

-with a copy to-

DLA Piper LLP (US)
1201 N. Market Street, Suite 2100
Wilmington, DE 19801
Attn:   Stuart M. Brown, Esq.
        Kaitlin M. Edelman, Esq.

-and-

DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York  10020
Attn:   Thomas R. Califano, Esq.
        Daniel G. Egan, Esq.

- 56 -

If to the Liquidation Trustee:

[_____]

## F.      Governing Law

Except to the extent the Bankruptcy Code, Bankruptcy Rules, or other federal law is applicable, or to the extent an exhibit to this Combined Plan and Disclosure Statement provides otherwise, the rights and obligations arising under this Combined Plan and Disclosure Statement shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflicts of law of such jurisdiction.

## G.      Withholding and Reporting Requirements

In connection with the consummation of this Combined Plan and Disclosure Statement, the Debtors and the Liquidation Trustee shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority and all Distributions hereunder shall be subject to any such withholding and reporting requirements.  All Beneficiaries, as a condition to receiving any Distribution, shall provide the Liquidation Trustee with a completed and executed Form W-9.

## H.      Headings

Headings are used in this Combined Plan and Disclosure Statement for convenience and reference only, and shall not constitute a part of this Combined Plan and Disclosure Statement for any other purpose.

## I.      Exhibits/Schedules

The Plan Documents are an integral part of this Combined Plan and Disclosure Statement, and are hereby incorporated by reference and made a part thereof.

## J.      Filing of Additional Documents

On or before substantial consummation of this Combined Plan and Disclosure Statement, the Debtors or Liquidation Trustee, as applicable, shall File such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Combined Plan and Disclosure Statement; provided that the Plan Supplement shall be Filed at least ten (10) days prior to the Plan Confirmation Hearing.

## K.      No Admissions

Notwithstanding anything herein to the contrary, nothing contained in this Combined Plan and Disclosure Statement shall be deemed as an admission by any Entity with respect to any matter set forth herein.

L.    **Successors and Assigns**

The rights, benefits, and obligations of any Person or Entity named or referred to in this Combined Plan and Disclosure Statement shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or assign of such Person or Entity.

M.    **Reservation of Rights**

Except as expressly set forth herein, this Combined Plan and Disclosure Statement shall have no force or effect unless the Bankruptcy Court shall enter the Plan Confirmation Order.  None of the Filing of this Combined Plan and Disclosure Statement, any statement or provision contained herein, or the taking of any action by the Debtors with respect to this Combined Plan and Disclosure Statement shall be or shall be deemed to be an admission or waiver of any rights or Causes of Action of the Debtors, Holders of Claims, or Interest before the Effective Date.

N.    **Inconsistency**

In the event of any inconsistency among this Combined Plan and Disclosure Statement, the Liquidation Trust Agreement, or any other instrument or document created or executed pursuant to this Combined Plan and Disclosure Statement, the provisions of this Combined Plan and Disclosure Statement shall govern; provided that in the event of any inconsistency among this Combined Plan and Disclosure Statement and the Plan Confirmation Order, the provisions of the Plan Confirmation Order.

O.    **Consolidation Under Local Rule 1017-3**

The classification and manner of satisfying all Claims and Interests under this Combined Plan and Disclosure Statement take into consideration the rights of Holders of Claims and Interests, whether arising under contract, law, or equity, that a Holder of a Claim or Interest may have against each of the Debtors.  Except as otherwise provided for herein in Classes 4A, 4B, 7A, and 7B, Holders of Claims or Interests against more than one Debtor are classified in consolidated classes of Claims against and Interests in all Debtors with respect to voting and the making of Distributions on account of such Claims and Interests. The Plan Confirmation Order shall approve this substantive consolidation.

This Combined Plan and Disclosure Statement serves as a motion seeking entry of an order consolidating the Estates under Local Rule 1017-3, with Case No. 16-10628 (CSS) to be closed and Case No. 16-10627 (CSS) to be the remaining consolidated debtor case. Unless an objection to such consolidation is made in writing by any creditor affected by this Combined Plan and Disclosure Statement, Filed and served on the Debtors on or before this Combined Plan and Disclosure Statement objection deadline as established by the Bankruptcy Court, the consolidation order may be entered by the Bankruptcy Court. In the event any such objections are timely Filed, a hearing with respect thereto shall occur at or before the hearing on confirmation of this Combined Plan and Disclosure Statement.

- 58 -

Upon such consolidation, (i) all SDI Opco Interests shall be cancelled, deemed terminated, and of no further force and effect, and (ii) all Intercompany Claims shall be cancelled and neither Debtor will receive any recovery on account of any such Intercompany Claim.

**P.**     **Dissolution of the Debtors**

Immediately following the distribution of all of the Debtors' and the Estates' property pursuant to the terms of this Combined Plan and Disclosure Statement, on the Effective Date, the Debtors' members, directors, managers, and officers and any remaining employees shall be deemed to have resigned and the Debtors shall be deemed dissolved for all purposes and of no further legal existence under any applicable state or federal law, without the need to take any further action or file any plan of dissolution, notice, or application with the Secretary of State of the Delaware or any other authority.

**Q.**     **Dissolution of the Creditors' Committee**

Upon the occurrence of the Effective Date, the Creditors' Committee shall dissolve automatically, whereupon its members, professionals, and agents shall be released from any duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except with respect to (i) obligations arising under confidentiality agreements, which shall remain in full force and effect, (ii) prosecuting applications for payment of fees and reimbursement of expenses of Professionals or attending to any other issues related to applications for payment of fees and reimbursement of expenses of Professionals, (iii) any motions or motions for other actions seeking enforcement of implementation of the provisions of this Combined Plan and Disclosure Statement, and (iv) prosecuting or participating in any appeal of the Plan Confirmation Order or any request for reconsideration thereof.

## XVI.   RISKS AND OTHER CONSIDERATIONS

**A.**     **Bankruptcy Considerations**

Although the Debtors believe that this Combined Plan and Disclosure Statement will satisfy all requirements necessary for confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will confirm this Combined Plan and Disclosure Statement as proposed.  Moreover, there can be no assurance that modifications of this Combined Plan and Disclosure Statement will not be required for confirmation or that such modifications would not necessitate the re-solicitation of votes.

In addition, the occurrence of the Effective Date is conditioned on the satisfaction (or waiver) of the conditions precedent specified herein, and there can be no assurance that such conditions will be satisfied or waived.  In the event such conditions precedent have not been satisfied or waived (to the extent possible hereunder) within ninety (90) days after the Plan Confirmation Date, which period may be extended by the Debtors, in consultation with the Creditors' Committee and PGV, then the Plan Confirmation Order may be vacated, no Distributions will be made pursuant to this Combined Plan and Disclosure Statement, and the Debtors and all Holders of Claims and Interests will be restored to the *status quo ante* as of the day immediately preceding the Plan Confirmation Date as though the Plan Confirmation Date had never occurred.

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class. The Debtors believe that the classification of Claims and Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because each Class of Claims and Interests encompass Claims or Interests, as applicable, that are substantially similar to the other Claims and Interests in each such Class. Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

While the Debtors believe that there are sufficient Liquidation Trust Assets to make Distributions to Liquidation Trust Beneficiaries, there can be no assurance that the Liquidation Trust Assets will be sufficient to pay all Liquidation Trust Operational Expenses or make Distributions to the Liquidation Trust Beneficiaries.

## B.    No Duty to Update Disclosures

The Debtors have no duty to update the information contained in this Combined Plan and Disclosure Statement as of the date hereof, unless otherwise specified herein, or unless the Debtors are required to do so pursuant to an Order of the Bankruptcy Court. Delivery of this Combined Plan and Disclosure Statement after the date hereof does not imply that the information contained herein has remained unchanged.

## C.    Alternatives to Confirmation and Consummation of the Plan

### 1.    Alternate Plan

If this Combined Plan and Disclosure Statement is not confirmed, the Debtors or any other party in interest (if, pursuant to section 1121 of the Bankruptcy Code, the Debtors have not Filed a plan within the time period prescribed under the Bankruptcy Code) could attempt to formulate and propose a different plan. Such a plan likely would result in additional costs, including, among other things, additional professional fees or potential asserted substantial contribution claims, all of which would likely constitute Administrative Expense Claims (subject to allowance). The Debtors believe that this Combined Plan and Disclosure Statement, which is the result of extensive negotiations with, among others, the Creditors' Committee and PGV, provides for an orderly and efficient liquidation of the Debtors' remaining assets and enables creditors to realize the best return under the circumstances.

### 2.    Chapter 7 Liquidation

If a plan pursuant to chapter 11 of the Bankruptcy Code is not confirmed by the Bankruptcy Court, the Chapter 11 Cases may be converted to liquidation cases under chapter 7 of the Bankruptcy Code in which a trustee would be elected or appointed, pursuant to applicable provisions of chapter 7 of the Bankruptcy Code, to liquidate the assets of the Debtors for distribution in accordance with the priorities established by the Bankruptcy Code. The Debtors believe that such a liquidation would result in smaller distributions being made to the Debtors' creditors than those provided for in this Combined Plan and Disclosure Statement because (a) the likelihood that other assets of the Debtors would have to be sold or otherwise disposed of in a less orderly fashion, (b) additional administrative expenses attendant to the appointment of a

- 60 -

trustee and the trustee's employment of attorneys and other professionals, (c) additional expenses and Claims, some of which would be entitled to priority, that would be generated during the liquidation, (d) creditors likely would not receive the benefit of the settlements and resolutions reached with PGV and the Creditors' Committee as described herein.

## D.   **Certain Federal Tax Consequences**

### 1.   **General**

The following discussion summarizes certain material U.S. federal income tax consequences to Holders of Claims entitled to vote on this Combined Plan and Disclosure Statement. This discussion is based on current provisions of the IRC, applicable Treasury Regulations, judicial authority and current administrative rulings and pronouncements of the IRS. There can be no assurance that the IRS will not take a contrary view, no ruling from the IRS has been or will be sought nor will any counsel provide a legal opinion as to any of the expected tax consequences set forth below.

Legislative, judicial, or administrative changes or interpretations may be forthcoming that could alter or modify the statements and conclusions set forth herein. Any such changes or interpretations may or may not be retroactive and could affect the tax consequences to the Holders of Claims, the Liquidation Trust, or the Debtors. It cannot be predicted at this time whether any tax legislation will be enacted or, if enacted, whether any tax law changes contained therein would affect the tax consequences described herein.

The following summary is for general information only. The tax treatment of a Holder may vary depending upon such Holder's particular situation. This summary does not address all of the tax consequences that may be relevant to a Holder, including any alternative minimum tax consequences and does not address the tax consequences to a Holder that has made an agreement to resolve its claim in a manner not explicitly provided for in this Combined Plan and Disclosure Statement. This summary also does not address the U.S. federal income tax consequences to persons not entitled to vote on this Combined Plan and Disclosure Statement or Holders subject to special treatment under the U.S. federal income tax laws, such as brokers or dealers in securities or currencies, certain securities traders, tax-exempt entities, financial institutions, insurance companies, foreign persons, partnerships and other pass-through entities, Holders that have a "functional currency" other than the United States dollar and Holders that have acquired Claims in connection with the performance of services. The following summary assumes that the Claims are held by Holders as "capital assets" within the meaning of section 1221 of the IRC and that all Claims denominated as indebtedness are properly treated as debt for U.S. federal income tax purposes.

The tax treatment of Holders and the character, amount, and timing of income, gain, or loss recognized as a consequence of this Combined Plan and Disclosure Statement and the distributions provided for hereby may vary, depending upon, among other things: (i) whether the Claim (or portion thereof) constitutes a Claim for principal or interest; (ii) the type of consideration received by the Holder in exchange for the Claim and whether the Holder receives Distributions hereunder in more than one taxable year; (iii) whether the Holder is a citizen or resident of the United States for tax purposes, is otherwise subject to U.S. federal income tax on

a net basis, or falls into any special class of taxpayers, such as those that are excluded from this discussion as noted above; (iv) the manner in which the Holder acquired the Claim; (v) the length of time that the Claim has been held; (vi) whether the Claim was acquired at a discount; (vii) whether the Holder has taken a bad debt deduction with respect to the Claim (or any portion thereof) in the current or prior years; (viii) whether the Holder has previously included in income accrued but unpaid interest with respect to the Claim; (ix) the method of tax accounting of the Holder; (x) whether the Claim is an installment obligation for U.S. federal income tax purposes; and (xi) whether the "market discount" rules are applicable to the Holder.  Therefore, each Holder should consult its tax advisor for information that may be relevant to its particular situation and circumstances, and the particular tax consequences to such Holder of the transactions contemplated by this Combined Plan and Disclosure Statement.

**THE FOLLOWING DISCUSSION IS INTENDED ONLY AS A SUMMARY OF CERTAIN U.S. FEDERAL TAX CONSEQUENCES OF THIS COMBINED PLAN AND DISCLOSURE STATEMENT AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL.  THE FOLLOWING DISCUSSION IS FOR INFORMATION PURPOSES ONLY AND IS NOT TAX ADVICE.  THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S PARTICULAR CIRCUMSTANCES. ACCORDINGLY, EACH HOLDER IS STRONGLY URGED TO CONSULT ITS TAX ADVISOR REGARDING THE U.S. FEDERAL, STATE, LOCAL, AND APPLICABLE NON-U.S. INCOME AND OTHER TAX CONSEQUENCES OF THIS COMBINED PLAN AND DISCLOSURE STATEMENT.**

**TO COMPLY WITH INTERNAL REVENUE SERVICE CIRCULAR 230, TAXPAYERS ARE HEREBY NOTIFIED THAT (A) ANY DISCUSSION OF U.S. FEDERAL TAX ISSUES CONTAINED OR REFERRED TO IN THIS COMBINED PLAN AND DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY ANY TAXPAYER FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON A TAXPAYER UNDER THE INTERNAL REVENUE CODE, (B) ANY SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE PROMOTION OR MARKETING OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN, AND (C) TAXPAYERS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

2.    **U.S. Federal Income Tax Consequences to the Debtors**

If there is a discharge of a debt obligation by a debtor (or, in the case of indebtedness with multiple obligors, indebtedness that is allocable to such debtor) for an amount less than the adjusted issue price (in most cases, the amount the debtor received on incurring the obligation, with certain adjustments), such discharge generally would give rise to cancellation of debt income, which must be included in the debtor's income (or, in the case of a debtor that is treated as a disregarded entity for U.S. federal income tax purposes, in the income of its owner). However, the Debtors should be able to utilize a special tax provision that excludes from income debts discharged in a chapter 11 case.  Notably, the Debtors may not recognize income as a result of the discharge of debt pursuant to this Combined Plan and Disclosure Statement because

section 108 of the IRC provides that taxpayers in bankruptcy cases do not recognize income from discharge of indebtedness. A taxpayer is, however, required to reduce its "tax attributes" by the amount of the debt discharged. Tax attributes are reduced in the following order: (i) net operating losses for the taxable year of the discharge, and any net operating loss carryover to such taxable year; (ii) general business credits; (iii) minimum tax credits, (iv) capital loss carryovers; (v) the basis of the property of the taxpayer; (vi) passive activity loss and credit carryovers; and (vii) foreign tax credit carryovers.

### 3.    U.S. Federal Income Tax Treatment With Respect to the Liquidation Trust

It is intended that the Liquidation Trust will be treated as a "grantor trust" for U.S. federal income tax purposes. In general, a grantor trust is not a separate taxable entity. The IRS, in Revenue Procedure 94-45, 1994-2 C.B. 684, set forth the general criteria for obtaining an advanced ruling as to the grantor trust status of a liquidating trust under a chapter 11 plan. The Debtors are not requesting a private letter ruling regarding the status of the Liquidation Trust as a grantor trust. Consistent with the requirements of Revenue Procedure 94-45, however, the Liquidation Trust Agreement will require all relevant parties to treat, for federal income tax purposes, the transfer of the Debtors' assets to the Liquidation Trust as (i) a transfer of such assets to the beneficiaries of the Liquidation Trust (to the extent of the value of their respective interests in the applicable Liquidation Trust Assets) followed by (ii) a transfer of such assets by such Beneficiaries to the Liquidation Trust (to the extent of the value of their respective interests in the applicable Liquidation Trust Assets), with the Beneficiaries of the Liquidation Trust being treated as the grantors and owners of the Liquidation Trust. Each Beneficiary of the Liquidation Trust will generally recognize gain (or loss) in its taxable year that includes the Effective Date in an amount equal to the difference between the amount realized in respect of its Claim and its adjusted tax basis in such Claim. The amount realized for this purpose should generally equal the amount of cash and the fair market value of any other assets received or deemed received for U.S. federal income tax purposes under this Combined Plan and Disclosure Statement in respect of such Holder's Claim. A Holder that is deemed to receive for U.S. federal income tax purposes a non-cash asset under this Combined Plan and Disclosure Statement in respect of its Claim should generally have a tax basis in such asset in an amount equal to the fair market value of such asset on the date of its deemed receipt.

Beneficiaries of the Liquidation Trust should value the assets of the Liquidation Trust consistently with the values determined by the Liquidation Trustee for all U.S. federal, state, and local income tax purposes. As soon as possible after the Effective Date, the Liquidation Trustee shall make a good faith valuation of the assets transferred to the Liquidation Trust.

Consistent with the treatment of the Liquidation Trust as a grantor trust, each Holder should report on its U.S. federal income tax return its allocable share of the Liquidation Trust's income. Therefore, a Holder may incur a U.S. federal income tax liability with respect to its allocable share of the income of the Liquidation Trust whether or not the Liquidation Trust has made any Distributions to such Holder. The character of items of income, gain, deduction, and credit to any Holder and the ability of such Holder to benefit from any deduction or losses will depend on the particular situation of such Holder.

- 63 -

In general, a distribution of underlying assets from the Liquidation Trust to a beneficiary thereof may not be taxable to such Holder because such Holders are already regarded for U.S. federal income tax purposes as owning such assets. Holders are urged to consult their tax advisors regarding the appropriate U.S. federal income tax treatment of Distributions from the Liquidation Trust.

The Liquidation Trustee will file with the IRS tax returns for the Liquidation Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and will also send to each Holder a separate statement setting forth such Holder's share of items of Liquidation Trust income, gain, loss, deduction, or credit. Each such Holder will be required to report such items on its U.S. federal income tax return.

The discussion above assumes that the Liquidation Trust will be respected as a grantor trust for U.S. federal income tax purposes. If the IRS were to successfully challenge such classification, the U.S. federal income tax consequences to the Liquidation Trust and the beneficiaries of the Liquidation Trust could differ materially from those discussed herein (including the potential for an entity level tax to be imposed on all income of the Liquidation Trust).

4.      **U.S. Federal Income Tax Treatment With Respect to Holders of Allowed Claims that are Beneficiaries of the Liquidation Trust**

Holders of Allowed Claims as of the Effective Date that are beneficiaries of the Liquidation Trust should be treated as receiving from the Debtors their respective shares of the applicable assets of the Liquidation Trust in satisfaction of their Allowed Claims, and simultaneously transferring such assets to the Liquidation Trust. Accordingly, a Holder of such Claim should generally recognize gain or loss in an amount equal to the amount deemed realized on the Effective Date (as described above) less its adjusted tax basis of its Claim. Additionally, such Holders should generally recognize their allocable share of income, gain, loss and deductions recognized by the Liquidation Trust on an annual basis.

Because a Holder's ultimate share of the assets of the Liquidation Trust based on its Allowed Claim will not be determinable on the Effective Date due to, among other things, the existence of Disputed Claims and the value of the assets at the time of actual receipt not being ascertainable on the Effective Date, such Holder should recognize additional or offsetting gain or loss if, and to the extent that, the aggregate amount of cash and fair market value of the assets of the Liquidation Trust ultimately received by such Holder is greater than or less than the amount used in initially determining gain or loss in accordance with the procedures described in the preceding paragraph. It is unclear when a Holder of an Allowed Claim that is a beneficiary of the Liquidation Trust should recognize, as an additional amount received for purposes of computing gain or loss, an amount attributable to the disallowance of a Disputed Claim.

The character of any gain or loss as capital gain or loss or ordinary income or loss and, in the case of capital gain or loss, as short-term or long-term, will depend on a number of factors, including: (i) the nature and origin of the Claim; (ii) the tax status of the Holder of the Claim; (iii) whether the Claim has been held for more than one year; (iv) the extent to which the Holder previously claimed a loss or bad debt deduction with respect to the Claim; and

- 64 -

(v) whether the Claim was acquired at a market discount. A Holder that purchased its Claim from a prior Holder at a market discount may be subject to the market discount rules of the IRC. Under those rules (subject to a *de minimis* exception), assuming that such Holder has made no election to accrue the market discount and include it in income on a current basis, any gain recognized on the exchange of such Claim generally would be characterized as ordinary income to the extent of the accrued market discount on such Claim as of the date of the exchange.

It is possible that the Service may assert that any loss should not be recognizable until the Liquidation Trustee makes its final distribution of the assets of the Liquidation Trust. Holders should consult their tax advisors regarding the possibility that the recognition of gain or loss may be deferred until the final distribution of the assets of the Liquidation Trust.

Although not free from doubt, Holders of Disputed Claims should not recognize any gain or loss on the date that the assets of the Debtors are transferred to the Liquidation Trust, but should recognize gain or loss in an amount equal to: (i) the amount of cash and the fair market value of any other property actually distributed to such Holder less (ii) the adjusted tax basis of its Claim. It is possible, however, that such Holders may be required to recognize the fair market value of such Holder's allocable share of the Liquidation Trust's assets, as an amount received for purposes of computing gain or loss, either on the Effective Date or the date such Holder's Claim becomes an Allowed Claim.

Holders of Allowed Claims will be treated as receiving a payment of interest (includible in income in accordance with the Holder's method of accounting for tax purposes) to the extent that any cash or other property received (or deemed received) pursuant to this Combined Plan and Disclosure Statement is attributable to accrued but unpaid interest, if any, on such Allowed Claims. The extent to which the receipt of cash or other property should be attributable to accrued but unpaid interest is unclear. The Debtors and the Liquidation Trust intend to take the position that such cash or property distributed pursuant to this Combined Plan and Disclosure Statement will first be allocable to the principal amount of an Allowed Claim and then, to the extent necessary, to any accrued but unpaid interest thereon. Each Holder should consult its tax advisor regarding the determination of the amount of consideration received under this Combined Plan and Disclosure Statement that is attributable to interest (if any). A Holder generally will be entitled to recognize a loss to the extent any accrued interest was previously included in its gross income and is not paid in full.

## XVII.  RECOMMENDATION AND CONCLUSION

The Debtors believe that this Combined Plan and Disclosure Statement is in the best interests of the Estates and urges the Holders of Impaired Claims entitled to vote to accept this Combined Plan and Disclosure Statement and to evidence such acceptance by properly voting and timely returning their ballots.

Dated: May 24, 2016                  **SDI SOLUTIONS LLC**
        Chicago, Illinois

                                   By:     /s/ David Sullivan
                                        Name: David Sullivan
                                        Title: Chief Executive Officer

                               **SDI OPCO HOLDINGS, LLC**

                                   By:     /s/ David Sullivan
                                        Name: David Sullivan
                                        Title: Manager

EAST\123901513.4